CHEANEY
vs
HOOSER.

---

TRESPASS.

Case 73.

*February* 1.

'Case stated and judgment appealed from.

The question presented for decision in this case.

## Cheaney *vs* Hooser.

APPEAL FROM THE CHRISTIAN CIRCUIT.

*Legislative power. Towns. Constitutional law.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court—Judge Breck did not sit in this case.

THIS action of trespass was brought by Cheaney to recover damages for the taking and conversion of his horse by Hooser. The defendant justified as Marshal of the town of Hopkinsville, and avers that he took the horse as a levy or distress, out of which to coerce from the plaintiff a tax of ten dollars, the amount of tax due from him under an assessment of tax for the year 1847, upon the citizens of Hopkinsville, by the Board of Trustees of that town, of which the plaintiff is alleged to have been a citizen. The replication denies the alleged citizenship of the plaintiff, and says he was not subject to be taxed, on which issue was joined. The case was submitted to the Court upon an agreed statement of facts; and the Judge refusing to adjudicate, the parties agreed upon a member of the bar, by whom it should be decided. His decision against the plaintiff, was entered as the judgment of the Court, from which the plaintiff has appealed to this Court.

It appears by the agreed facts, that the plaintiff resides outside of the limits of the town of Hopkinsville, as they existed before the passage of the act of February, 1846, (*Session Acts*, 132,) but within the limits as extended and established by that act. And the question intended to be made, and which was decided in the Circuit Court, is, whether the plaintiff's property outside

CHEANEY
vs
HOOSER.

of the former limits but within those prescribed by the act of 1846, is subject to the taxing power of the trustees of the town of Hopkinsville, as exercised with regard to property within the former limits. Before the extension of the boundary by the act referred to, the trustees of Hopkinsville had been empowered to levy and collect an *ad valorem* tax not exceeding twenty five cents upon the hundred dollars, upon the real and personal estate in said town. The act of February, 1846, makes no express grant of power, but simply amends the act incorporating the town of Hopkinsville, so as to extend the limits of said town to the boundary described. It may be assumed that it was the intention of this enactment to place the extended town under the power and jurisdiction of the trustees for the purposes of revenue and police, as fully as the pre-existing town was before the extension. And whether the Legislature had power, under the constitution, thus to subject it, is the question which was intended to be presented for decision in the case before us.

The act contains no recital of facts, nor any intimation that the extension is called for by any necessity or by public expediency, or by the petition or consent of the persons whose lands and other property are to be included in the town, but extends the limits to a designated boundary, of which four of the corners appear on the face of the act, to be in the fields of different persons therein named. It appears by the agreed facts, that the trustees and a large majority of the citizens of the old town, petitioned for the extension, and that some of those residing within the proposed addition united in the petition, while others, among whom was the plaintiff, refused to unite, and objected to the proposed extensions, but that a large portion of the citizens residing within the new extension had afterwards voted at the polls for trustees of the town. The agreed facts further show, that by the extension, the area of the town has been increased from about 250, to about 350 acres, and its taxable property from about $300,000 to about $441,000—that a part of the land included in the extension, and adjacent to plaintiff's residence, has for

CHEANEY
vs
HOOSER.

years been divided into small lots, and is thickly settled with finely improved residences, occupied by gentlemen who carry on business within the old limits, and enjoy, to the fullest extent, the advantages of the corporation—that this part is within three hundred yards of the centre of the town and its business—that the plaintiff's residence is within thirty feet of the former boundary, from which it is separated by a street that has been kept in repair by the trustees, and that since the passage of the act of 1846, the trustees have exercised the same powers of taxation, improvement of streets, &c. within the added territory, as within the former limits of the town.

This statement of facts, embracing all which are presented in the agreed case, authorizes the assumption, that on one side of the former town of Hopkinsville, a comparatively dense population had located itself with a view, doubtless, of enjoying the advantages arising from a situation so near to the town, and probably with the expectation and intention of being exempt from the burthens which might devolve upon the actual citizens. There can be no doubt that the Legislature might, with the consent of the proprietors of the land covered by this population, have made it an integral part of the town, and have thus subjected it to the ordinary powers of the local authorities. Could the same have been done upon the petition of a majority of these proprietors, so as to bind the minority, against their consent? Could it have been done upon the petition of all but one, so as to bind that one against his consent? Could it have been done upon the mere will and judgment of the Legislature, without the petition of any of the proprietors, and without regard to their wishes on the subject?

If the Legislature has no power to extend the limits of a town, except such as is derived from the will of the proprietors of the lands proposed to be included, we know of no principle which would authorize any majority, however great, to bind the minority, however small, and the legislative act would be ineffectual to incorporate any portion of the adjacent land with the town, against or without the assent of the individual

*They who own land adjacent to an incorporated town, may, on their petition, have their land inclosed within the limits of the corporation.*

owner of that portion. If this be the true condition of the legislative authority on the subject, the power is merely that of effectuating the will of each individual proprietor with regard to his own land. And it must be so, or else if the Legislature has the power to pass such an act at all, it has it as the legslative department of the government, authorized to act upon its own will and judgment. And however these may be properly influenced by the wishes or representations of the parties who may be affected by its acts, those acts having the authority of the constitution, and of the entire Commonwealth to give them force, cannot be limited or affected by the will or the interests of the particular persons upon whom they may operate. The act of 1846, which has been referred to, neither submits the question of extension to the individuals concerned, nor professes to be based upon their will, nor makes any reference to their interest. It is in its terms a peremptory and absolute mandate, claiming no support from any extraneous will or act, but resting exclusively upon the will and judgment of the Legislature. And as the agreed facts do not authorize the assumption that all, or even a majority of the proprietors of the land thus brought within the town, requested or assented to the act, and it is certain that the plaintiff did not, the authority of the act, so far at least as this case is concerned, depends upon the broad question of legislative power under the constitution.

By the constitution of Kentucky, the legislative power of this Commonwealth, that is, all the legislative power, subordinate to the constitution, is vested in the General Assembly, subject of course, to such restrictions as are expressed or necessarily implied in other parts of the constitution, and to such as are imposed by the constitution of the United States. If the extension of the limits of a town be a subject embraced within the general legislative power of the Commonwealth, it is within the power given to the General Assembly, and is an allowable subject of legislative action, unless it is interdicted by some provision of the State or Federal constitution, or unless its exercise in the particular case

should violate some right secured by one or both of those instruments.

The Legislature have in Ky. the power of granting all charters of incorporation or conferring such power on other authorities.

In common language, any indefinite number of in-habited houses in close vicinity to each other, constitutes a town. But something more is necessary to fill up the legal idea of a town, which may indeed exist without, or at any rate, before either houses or people. Besides people and houses, and the territory on which they are situated, the authority of law, under which the people may be governed, or govern themselves in an associated form, and the affairs of the town be regulated for the common convenience and prosperity, is essential to the proper character of a town. This essential feature in the proper character of a town, can only be imparted to it by the direct action of the Legislature referring to the particular subject, or by the act of some other body or tribunal authorized by it. It is true, that in other governments the King has exercised the power of granting or altering municipal charters; but it is undoubtedly a legislative function by whatever organ it may be exercised in particular countries; and we presume its exercise has never been attempted under a grant of Executive power in any government by whose fundamental law the three great powers of government are distinguished and confined to separate bodies of magistracy. In this State and in Virginia, it has been the frequent practice of the Legislature to establish towns by particular acts, and that department alone exercises the power of granting or altering charters of incorporation. And although the Legislature of this State, at a very early period passed a general act for the establishment of towns by a specific mode of proceeding in the several County Courts, this is obviously a mere delegation of authority for the greater convenience of the citizens, and not the regulation of a pre-existing power inherent in the Courts as Judicial tribunals.

When a town has been built and peopled, the Legislature have the power to

A town then, including the essential circumstance of a municipal government, being a corporation, or *quasi* corporation, is a mere creature of the law and of the legislative authority. The aggregation of people, and

the building and inhabiting of houses which constitute the *material* requisites of a town, are the voluntary acts of individuals. But when a town has been voluntarily made without such authority of law as places a local government over it, or enables it to govern its inhabitants and protect their interests, the Legislature has unquestionably the power, and if the population be of any considerable magnitude, it is its imperious duty to provide specially for its government, either by a corporation or *quasi* corporation, to be chosen by the local population, which is the usual and acceptable form in this country, or by such officers of the State as might be deemed requisite. It need scarcely be remarked, that a dense population, a populous town requires a more stringent government, or at least a more active police, and a more energetic execution of the laws for the preservation of peace and order, and for the security of persons and property, than a sparse country population, and that these and other exigencies of a town, for which the density and pursuits of the population requires provision to be made, a local or municipal government to be chosen by the town itself, has been found most suitable. Such a government erected for such purposes may require greater proportional contributions for its support, and for the various objects which become essential to the convenience and prosperity of a town, than other citizens may be subject to under the general laws of the State. And justice and even equality dictate that this increased burthen should fall upon the local and not upon the general public. But it cannot be supposed that the consent of every individual, or of every property holder, would be requisite in order to subject him or his property to the jurisdiction of such government as the Legislature might, without violating the constitution, deem proper for the local population. On the contrary, one of the reasons, and a principal one, which renders it necessary that the laws should make special provision for the government of a town, is that there may be individuals in the mass of its population who will not consent to any restriction or burthen, however necessary to the common interest, or

CHEANEY
vs
HOOSER.

grant an act of incorporation without the assent of all its citizens, or even the majority.

even safety. And moreover, as it is the duty, as well as the right of the Legislature to provide for and promote by such laws as are within its competency to enact, the security and prosperity of the entire community and of every part, we do not suppose that its power to provide a government for a town which is without one, depends necessarily upon the consent even of a majority of its inhabitants. The ordinary form of municipal government would indeed require the action of the inhabitants, or of some portion of them, to carry it into effect. But if all should refuse, this would not place them out of the jurisdiction of the Legislature, which would still be bound to provide for their government and safety in such manner as their condition and circumstances might require, and might compel them to make just contributions to the expense of such local measures as might be required for their own local purposes. And whatever assent might in theory or in principle be deemed requisite as the basis of this peculiar legislation, might be implied from the fact, that the individuals concerned had placed themselves in a condition which requires it. This power of providing or imposing a local government upon a town, existing without legal establishment, includes necessarily the power of ascertaining and prescribing the extent of the town, and the just boundaries of the territorial jurisdiction thus to be established. And the same power which may judge of the necessity of establishing this local government, and which must determine the territorial limits of its authority, must also be competent upon like grounds, (of the existence of a contiguous population, requiring in its judgment, a local government,) to provide a new one for them, or to extend to them the jurisdiction already created. If, for instance, a town established by the Legislature, or under its authority, should outgrow its legal limits upon all sides, or upon one side, the Legislature might provide for the government of the population outside of these limits, upon the principles already stated. And the question whether this should be done by incorporating them and the territory occupied by them, with the former town,

or by the erection of a separate corporation, would surely be a question of expediency and not of power.

It is however sufficient in this place to say, that the extension of the local government to a new boundary, and over the intervening population, being an act essentially of the same nature as the establishment of the original boundary and government over a population that before had no local government or burthens, if the latter act be properly a legislative function, so must the former be. And if, as we think, may be safely assumed, they are both embraced within the sphere of legislative power, or are properly acts of legislation, then they must be within the legislative discretion to do or forbear to do them in any particular instance, unless the legislative power be in this respect restricted in some of the modes before referred to. And if they be within the legislative discretion, whatever abuse of that discretion there may be in any particular instance, or whatever apparent oppression or injustice may be the consequence, there is no remedy for its correction but in an appeal to the Legislature itself, unless the complaining party can rest his case upon some prohibition of the constitution, or on some right secured by that instrument. An act of the Legislature not interdicted by the constitution being the law of the land, no other department or tribunal can, upon its own sense of justice or propriety, arrest its operation. The wisdom and justice and discretion requisite for deciding on the expediency of all legislative measures must be assumed to be in the Legislature itself, where the constitution has placed the power of adopting or rejecting the measure. And the Judiciary, instituted for the purpose of administering the law, has no right or power to deny effect to a legislative act, except upon the ground of its being repugnant to the constitution, and of its being therefore in consequence of the supremacy of that instrument, and of its express declaration, no part of the law of the land. Confining our view then to the case already considered, of a legislative act which merely provides a local government for an actual town already existing, or extends the existing local government of a

CHEANEY
*vs*
HOOSER.

The Legislature have power, under the constitution, to add territory to a town already established upon the same principle that they may incorporate a town.

The Legislature have the constitutional power to confer taxing power upon local corporations for their government and security.

town so as to include adjacent territory and population constituting a town in fact, upon its borders, we proceed to inquire whether such an act violates any prohibition of the constitution, or any right secured by it.

1. The objection that the Legislature cannot constitutionally delegate to a local corporation the power of local legislation and taxation for local purposes, is founded upon a misconception of the nature and extent of the legislative power granted to the legislative department, and is disproved by the practice of constitutional governments every where. It is the legislative power of the Commonwealth, excluding the power over the constitution itself, that is vested in the Legislature, subject only to the restrictions above referred to. That power undoubtedly includes the power of erecting local corporations to be invested with subordinate powers, essential to the local convenience, and to the enforcement of good order and peace within the corporate territory. A special local taxation, as already intimated, follows justly and naturally as the correlative of the separate association of the incorporated community, for purposes essentially peculiar to itself, and in which the Commonwealth at large has only such partial and indirect interest as the whole community is supposed to have in the prosperity and good government of every part. While therefore, the Legislature as the depository of the general legislative power, may and should, in the erection and regulation of these subordinate governments, which are but instruments for conveniently carrying out the objects of the State government, confer only such powers as are necessary for the local convenience, and limit the power of taxation so as to prevent unnecessary and oppressive burthens, it seems more convenient and appropriate, and more accordant with the spirit of our institutions and polity, that the power of local regulation and of taxation for local purposes, should be exercised by the local authorities, than by the central government. And although it is true that the Legislature cannot constitutionally delegate the general powers of legislation, or any portion of them, yet the power of erecting municipal corporations with

powers of local regulation and taxation, being itself a part of the general legislative power, may be exercised at the discretion of the Legislature, without a violation of the constitution or principles of the government. Such acts of legislation have occurred in this State in instances almost without number, and their validity has been maintained in this Court in many cases, either by tacit recognition or express decision: *Williamson* vs *Commonwealth*, (4 *B. Monroe*, 150;) *Keasey* vs *City of Louisville*, (4 *Dana*, 525;) *Lexington* vs *McQuillan's heirs*, (9 *Dana;*) *Tesh* vs *Commonwealth*, (4 *Dana*, 525;) *Louisville* vs *Hyatt*, (2 *B. Monroe*, 177;) *Same* vs *Same*, (5 *B. Monroe*, 199.)

2. The argument that the subjection of land to local burthens against the consent of the owner, is a violation of the grant of the land in absolute fee simple by the Commonwealth, and is therefore an impairment of the contract, and a violation of the State and Federal constitutions prohibiting such impairment, is sufficiently answered by the principle, which is undeniable, that in every grant of land by the State, though it be in terms unqualified, it is implied as a condition, that the land is to be held subject to its just rate of contribution for general and local purposes, to be determined by the lawful authority in the lawful manner. All property within the State is held subject to the power of constitutional taxation by the Legislature for general purposes, and all property within the several local divisions of the State, is held subject to such taxation for local purposes as may be lawfully imposed upon the local property by the local authorities. All the lands of the State have been granted either by the State of Kentucky, or by the State of Virginia, in whose place as to this matter, Kentucky stands. It cannot be imagined that any prohibition in the constitution, either of the State or of the United States, was intended to secure to these grants any new operation or effect by which they should exempt the granted lands from the ordinary acts and operation of the legislative power inherent and essential, and therefore in its nature paramount to the rights of individuals as derived from public grants

*All the lands of the Commonwealth are held subject to the general power of the Legislature to tax them, either for general purposes of government or for local purposes within localities in which they may be situated.*

of land. The clauses of the State and Federal consti-tutions, prohibiting the impairment of contracts, or of their obligation, may secure the inviolability of these grants, but do not affect their construction, nor the ascertainment of the rights held under them. They certainly do not restrict the legislative power of general taxation, which includes necessarily the power of increasing or diminishing the tax, as in view of the public exigencies the legislative discretion may determine; nor do they restrict the legislative power of regulating and changing the local divisions of the State, nor of erecting local or municipal corporations, nor of empowering the local authorities of counties or towns to levy upon the local property such taxes within the limit prescribed by the Legislature, as may in their judgment be necessary for such local purposes as they are authorized to accomplish by taxation. We do not therefore perceive that the clauses now referred to, have any bearing upon the question whether the Legislature may at its own discretion, impose a local government upon an existing town, or bring the surburban population and territory within the jurisdiction of the principal town by extending its limits. Nor indeed do we perceive that this particular clause of the constitution could operate upon the question of the legislative power to establish a town by law upon the land of an individual without his consent: *Johnson* vs *Winn's heirs*, (4 *Littell*, 322.)

The constitution does not even prohibit the State from taking or appropriating private property for public use, though it be land which the State has granted to an individual, but requires only that just compensation shall be first made, (or as the Court has construed it, secured,) to him therefor. Authorized or constitutional taxation is not taking private property for public use, within the meaning of this clause; and therefore neither the increase of taxation, either local or general, beyond what it was when any particular individual acquired his land from another or from the State, nor the subjection of it to a different power of local taxation, by changing the boundary lines of counties or towns,

though the consequence be an increase in the rate of taxation, amounts necessarily to taking private property for public use. And even if it did, it would not be a violation of the clause protecting the obligation of contracts. For if it were, the right of the State to take private property against the will of the owner, even on making payment, not being recognized, would be prohibited by this clause in the Federal Constitution, and its recognition by the State constitution would not be sufficient to authorize it. We are not satisfied, therefore, that even a legislative abuse of the power of taxation, general or local, would properly raise a question under the constitutional clauses relating specially to the impairment of contracts or their obligation.

3. We come then to the third, and as we consider it the most serious objection, which alleges that the extension of the limits of a town, so as to include the adjacent land within the town, against or without the consent of the owners, and to subject the property and people within the added territory, to the jurisdiction and taxing power of the extended municipal government, without the consent of the added population, is in effect taking private property for public use, without the consent of the owners; and that if done without making or at least securing to them a just compensation, not merely in estimated advantages but in money, it is a violation of the constitutional provision on that subject. There being no express constitutional declaration or prohibition directly applicable to the power or subject of taxation, and none which in terms secures equality or uniformity in the distribution of public burthens, either general or local, there is no clause to which the citizen can with certainty, appeal for protection against an oppressive and ruinous discrimination under color of the taxing power, unless it be that which prohibits the taking of private property for public use, without compensation. The general spirit of equality and the sense of justice which pervade not only the constitution but the community at large, and therefore, presumably, its representatives, would doubtless furnish guarantees ordinarily sufficient to prevent any flagrant departure

from substantial equity in the imposition of taxes or other burthens, for the benefit of the State at large. Nothing but extreme excitement bordering on fury, would reconcile even a domineering majority, to an act which should impose on the minority the entire or a flagrantly disproportionate burthen in supporting the government or carrying on its public and general objects. But even this latter result might, to some extent, be indirectly or inadvertently produced with respect to burthens which ought to be general. And there is still more danger of its being done or authorized in those acts of legislation which being entirely local in their character and operation, and not apparently calculated to affect injuriously, either persons or property, may attract little attention or interest beyond the immediate locality to which they relate. Such acts affecting local interests only, referring to local circumstances, controlled mainly by the local representation, and therefore, likely to be influenced by the majority of those interested, may, by their operation, not fully explained or comprehended, subject a few individuals or a single one, to burthens for the benefit of those alone who are to impose them, and for purposes in which the parties thus subjected have no such interest as should require contribution from them.

However flagrant might be the oppression when actually developed, though it might approach or amount to actual spoliation by the appropriation of the property of one or a few to the exclusive benefit of the many, the constitution furnishes no solid and available protection against the result of legislation so contrary to its spirit, except in the clause which prohibits any man's property from being taken or applied to public use without just compensation made: (Art. 10, Sec. 12.) This is the great conservative principle of the constitution, by which the rights of private property are to be preserved from violation under public authority; and we should feel bound to give it, as has heretofore been done, a liberal construction for the attainment of so important and valuable an object: *Pearce's heirs* vs *Patton, &c.* (7 B. Monroe, 167.)

But this clause cannot be applied to any question not affecting the rights of property, and certainly would not prohibit the subjection of individuals who had by building in close vicinity made a town *de facto*, to such local government consistent with the constitution as the Legislature might deem expedient and suitable, provided this government was supported at the general expense of the State, and should have no power to impose any local burthen or tax. Nor are we aware of any other clause in the constitution which would prohibit such a legislative act, though it might be a violation of principle in taxing the whole State for the peculiar benefit of a small part. Then the whole force of the clause in the case supposed, would apply to the question whether the Legislature might require the local population to support the government provided for them, and might authorize the local government to levy, for this and other local purposes, such taxes upon the population and property within its designated limits, as the Legislature itself should authorize. We think the principles already stated in this opinion indicate the answer, that when there is a town in fact, requiring, in the opinion of the Legislature, a local government, it may by its own authority, not only provide such government, but also invest it with such power of local taxation and regulation as may be deemed requisite by the Legislature, for local purposes. And that such taxation if equal and uniform within the prescribed limits, can no more be regarded as the taking of private property for public use, than a general and uniform taxation of the people and property of the State for general purposes, can be so regarded.

It is indeed true that taxation in every form, involves in fact, the taking of private property for public use. But if it is to be so regarded in view of this clause of the constitution, it must be assumed also, that in view of the same clause, the protection afforded to every citizen by the government, and the advantages to accrue to all by the effectuation of such objects as the Legislature may deem worthy of public expenditure, is a just compensation to each citizen for the equal or rateable

CHEANEY
*vs*
HOOSER.

Where a town stands in need of a local government, the Legislature may not only provide such government, but may constitutionally give power to its local authorities to tax the property and citizens within its limits for the support of such government.

contribution required of him. And as the Legislature may thus determine conclusively, the adequacy of the compensation which is made for the individual property taken by an equal tax throughout the State, so if it has the power, (as we think is unquestionable,) to levy or authorize a local tax for local purposes, must its judgment as to the purposes which will justify it and the amount which is to be levied, be conclusive upon the question of adequacy of the compensation which the accomplishment of these purposes will furnish for the property taken in levying an equal tax upon the local population and territory, for the recognized local purposes. And it is only upon the ground that by the direct or indirect operation of the legislative act which levies the tax or authorizes its being levied, an undue proportion of the burthen of taxation, whether for general or local purposes, is thrown upon the persons or property of particular individuals or portions of the general or local community, or on the ground that particular individuals or portions of the community, general or local, are subjected to a burthen which ought to be borne by all or by a greater number, or that the power of local taxation for local purposes, as exercised or authorized by legislative act, is made to operate upon persons or property which being out of the reach of the proposed local benefits, ought not to be brought within the range of the local tax, that there can be any plausible ground for saying that property taken for a tax authorized by law, is taken without just compensation.

It must be obvious from this view of the subject, that the clause in question was not intended to exclude or even to restrict the ordinary power of general or local taxation inherent in the legislative function and conferred upon the legislative department of the government; and that there must necessarily be vested in that department, a wide range of discretion, not only as to the objects for which a tax, general or local, may be enforced, as to which its judgment would seem to be conclusive, but also as to the particular subjects or species of property which shall be liable to taxation, and as to the extent of territory within which a local tax shall operate.

It would, therefore, be a task of extreme delicacy, for the judiciary to decide upon its own mere judgment, with respect to any of the particulars referred to, that the Legislature has exceeded the limits of the discretionary power with which it is invested. And we should doubt greatly, our right to make such a decision in any case in which the legislative power attaches to any extent, if there be not in the constitution itself, and in the clause now under consideration, some limit to the legislative discretion. That limit can only consist in the discrimination to be made between what may with reasonable plausibility be called a tax, and for which it may be assumed that the objects of the taxation are regarded by the Legislature as forming a just compensation, and that which is palpably not a tax, but is under the form of a tax, or in some other form, the taking of private property for the use of others or of the public, without compensation. Exact equality in the distribution of public burthens and especially of such as are local, is perhaps unattainable and cannot form the test of the distinction referred to. There must be a palpable and flagrant departure from equality in the burthen as imposed upon the persons or property bound to contribute, or it must be palpable that persons or their property are subjected to a local burthen for the benefit of others, or for purposes in which they have no interest, and to which they are, therefore, not justly bound to contribute. The case must be one in which the operation of the power will be at first blush, pronounced to be the taking of private property without compensation, and in which it is apparent that the burthen is imposed without any view to the interest of the individual in the objects to be accomplished by it. If it be so, no matter under what form the power is professedly exercised, whether it be in the form of laying or authorizing a tax or in the regulation of local divisions or boundaries, which results in a subjection to local taxes, and whether the operation be to appropriate the property of one or more individuals, without their consent, to the use of the general or local public, or to the use of other private individuals or of a single individual, the case must

be regarded as one coming within the prohibition contained in this clause or the constitution, is impotent for the protection of individual rights of property from any aggression, however flagrant, which may be made upon them, provided it be done under color of some recognized power. We are not prepared to concede that it is thus impotent. But while we are disposed to consider this clause of the constitution as being sufficiently comprehensive to form a barrier against flagrant outrage or palpable wrong in taking property under any power possessed by the Legislature, it is too indefinite in its character to afford protection to every case of seeming hardship or injustice, or to authorize a judicial tribunal to inquire into the minute operation of laws imposing or authorizing taxes, or regulating the boundaries of local jurisdictions, and to arrest their operation in every case in which the Court may find some inequality and consequent oppression. The case must be palpable and the injury flagrant, to authorize the Court, on. the ground of this clause, to interfere with the exercise of a power so important and so indefinite as that of taxation by the legislative department.

How then stands the case before us? The plaintiff claims the protection of this clause of the constitution, on the ground, that by a legislative act enlarging the boundaries of the town of Hopkinsville, himself and his property have, without his consent, been brought within the limits of the town, and thereby subjected to taxation at the will of the town and for its benefit, and he says that in compelling him to pay the tax, his money or his property is taken without his consent, for the use of the town. But although he has not consented to any of these acts, it does not follow that this is a case of flagrant injustice, or of palpable wrong, or of taking private property, without such compensation as the tax payer is bound to consider as a just equivalent for the tax. The question is not whether he actually consented or opposed the extension of the town, but whether he ought not to have consented, or rather, whether he with others similarly situated, had not placed themselves in such a condition as authorized the

The extension of the limits of a town whereby the property of an individual has been brought within the corporate limits without his consent, and subjected to taxation for town purposes, is no infraction of the constitution by taking private property for public use.

Legislature to put them under a local government, and subject them to local taxation, and if this were so, whether the Legislature might not according to its own sense of expediency and justice, either incorporate them with the town of Hopkinsville, or give to them a separate organization.

This is not the case of vacant land, or of a well improved farm occupied by the owner and his family alone for agricultural purposes, and which without being required for either streets or houses, or for any other purpose of the town, but that of increasing its revenue, is brought within its taxing power by an act extending its limits.   Such an act, though on its face simply extending the limits of a town, and presumptively a legitimate exercise of power for that purpose, would in reality when applied to the facts, be nothing more or less than an authority to the town to tax the land to a certain distance outside of its limits, and in effect to take the money of the proprietor for its own use without compensation to him.   But suppose the proprietor of a farm adjoining an established and flourishing town, should lay out his land upon the town limits in small lots, and by selling or leasing them, should invite the building and occupation of houses, and in fact raise up a town, could he or his alienees or lessees, or the residents in his town complain if the Legislature should take jurisdiction over it and them, and either erect a separate municipal government for them, or incorporate them with the adjacent town, from which they had taken their growth?   We do not admit that persons who had thus concurred in making a town, in fact could say that they had not consented, or that their actual consent was necessary to its being made a town in law. And although if the two towns were incorporated into one, some inequality might exist in the appropriation of the taxes between the two towns considered separately, and to the advantage of the larger one, this would not necessarily or probably follow to an extent greater than is found to exist between the closely and the thinly settled portions of any town.   And it certainly could not be assumed from the incorporation of the new with

CHEANEY
*vs*
HOOSER.

This power may be abused by an unreasonable extension of town limits, so as to embrace farms, &c.

the old town, and its consequent subjection to a common taxation with all the citizens, that there was a flagrant abuse of the power of taxation or of local regulation amounting to the taking of private property for public use without compensation.

The essential difference between the cases supposed is, that where the original limits of a town are not filled up, and it has not in fact extended itself beyond them on either side, and upon the petition of the town, the adjacent vacant land or cultivated farm not necessary or wanted for streets or houses, is brought within it by an extension of its bouudary, the whole force and effect, as well as obvious intent of the act is to subject these exterior lands to the taxation of the town, without even a pretext for extending the protection or control of the town over them, and the power of local regulation and government would furnish no legitimate or real basis for the act, while in the other case, the actual growth of the town beyond its legal limits, on any of its borders, furnishes a basis and motive for legislative interposition, not merely for the purpose of subjecting the exterior part to the taxing power of the town, but also for extending over it the government and care of the municipal authorities, with the equal right of participating, not only in their election, but also in the benefits to result from the appropriation of the common revenue of the town to the convenience and security of the new portion in common with the rest. If the act may rest upon a legitimate or constitutional basis, it cannot be defeated by the presumption of unjust motives or objects, nor even by their actual coexistence with such as are just and legal.   Then as to the operation of the act in the case last supposed, the incorporation of the exterior with the interior town, would only be making them the same town in law as they had already been in fact.   And as from actual contiguity, the amalgamation might, and probably would be complete, it would not be like the subjection of a smaller or separate town to the jurisdiction and taxing power of a larger one in its vicinity.   And even in the absence of any special guards provided in the act of incor-

poration for the protection of the exterior portion, no apprehension should be indulged of any inequality or injustice greater than ordinarily arises in the appropriation of revenues derived from taxation, and which is irremediable either by the Courts or by the law itself. To require the tax to be restored by appropriation to the tax payer, would be in effect to abrogate the tax. The appropriation of it for the benefit of the community, must be left mainly to the discretion of those who are appointed to act for the community.

We repeat then, that an act extending the limits of an existing town, so as to include an actual extension of the town, as demonstrated by houses and population, cannot be characterized as a mere act of injustice and oppression, for the benefit of the original town, as the taking of private property for public use, or for the use of others—and that as there is a basis for such an act, not only in the powers, but in the duties of the legislative department, the Judiciary can neither ascribe it to any unjust motive, nor exercise any greater scrutiny with regard to the details of its operation, than would be proper with respect to any ordinary act of legislation.

The same principle would obviously not apply to an indefinite or unreasonable extension of the limits of a town so as to include vacant lands, or farms, or other distinct towns. And although the extension in this case may have been greater than was necessary to include the actual population bordering on the town, it does not appear that the tax required of the plaintiff was assessed upon any property outside of the actual limits of the exterior part of the town, but on the contrary his residence was immediately adjacent to the former boundary. We do not, therefore, feel called upon to determine whether the limits have been unreasonably extended, nor does the record furnish any sufficient means of deciding that question. Nor do we suppose, that in a case where the legislative power properly attaches, we are authorized to apply any nice or exact scrutiny to the manner of its exercise. And as no question is involved in this case, except as to the

The power of opening streets and alleys in

CHEANEY
vs
HOOSER.

*grounds so attached may not exist, if it has not been dedicated by the proprietor, without just compensation being made.*

legality of the tax attempted to be collected from the plaintiff, we only remark further, with reference to the clause of the constitution which we have been last considering, that although it affords no protection to the plaintiff, or others similarly situated, against the equal and uniform taxation authorized to be imposed on the property within the town of Hopkinsville, it may apply to the taking of their property for streets, or any other public purpose of the town, except so far as they themselves, by leaving open spaces for passways between their lots or residences, may have appropriated them to common public use. If there be any ground to apprehend oppression in opening or improving streets, the Legislature would doubtless afford protection against it, if the Judiciary should not be competent to do so.

The objection that the plaintiff and others, are by the legislative act in question, made members of an association or body politic with which they do not choose to be united, is sufficiently answered by the assertion of the legislative power to erect municipal corporations without regard to the will of each, or even a majority of the individuals who may be included. The power applies especially to territory, or to population connected with territory, and operates upon persons by virtue of that connection. The real objection, however, seems not to be so much to the association or its advantages, as to the burthens which belong to it.

Wherefore, the judgment for the defendant is affirmed.

*Woolley & Kinkead and Wooldridge* for appellant; *Gray* for appellee.