CASE 75—PETITION EQUITY—JUNE 28

# Cypress Pond Draining Company vs. Hooper et al.

APPEAL FROM UNION EQUITY AND CRIMINAL COURT.

The Cypress Pond Draining Company was incorporated to drain and keep drained the lands within a specified boundary, at the cost of the owners of such lands, the company being authorized by the act to collect a tax on each acre not exceeding twenty-five cents per acre for that purpose, for ten years, to be collected by the sheriff. With the money thus collected the board of managers, six in number, named in the act, is required to drain certain creeks and ponds within said boundary. The members of the board own in the aggregate 3,840 acres, the larger portion of which is low and wet land, subject to inundation, and of little or no value in its present condition, but will be rendered very valuable by the contemplated draining. The corporate boundary contains 14,621 acres, owned by sixty-eight persons. Thirty-four of these, owning 5,975 acres, had no agency in the passage of the act, and no notice of the application therefor, gave no assent to its provisions, and a very small portion of whose lands, if any, will be benefited or improved in value by the proposed draining, and they resist the collection of the tax. *Held*—That, as to them, the act of incorporation is unconstitutional, inoperative, and void. (*Con. Ky., art.* 13, *sec.* 14.)

HUGHES & DALLAM, for appellants, cited *Churchill vs. Jefferson Pond Company, MS. opinion May,* 1840.

L. W. POWELL, for appellees, cited *Constitution Ky., art.* 13, *secs.* 14, 30; 1 *J. J. Mar.,* 567; 9 *Dana,* 516, 517; 7 *B. Mon.,* 167; 13 *Ib.,* 31, 32, 33; 16 *Ib.,* 498.

JAMES HARLAN, on same side, cited 1 *Sess. Acts* 1855–6, *page* 292; 2 *Kent,* 309, 8*th edition; Ib.,* 310, 312; 4 *Burr.,* 2200; 3 *Term Rep.,* 240; 2 *Mass. Rep.,* 269; 1 *Greenleaf's Rep.,* 79; 1 *Strob. Eq. Rep.,* 209; 16 *Pick.,* 412; 18 *Eng. Law & Eq. Rep.,* 199; *Bacon's Ab.,* 2 *vol., title Corporations,* (*new ed.,*) 457; 4 *Peters,*

167; 3 *Paige*, 45; 2 *Bac. Ab.*, 438–9; 9 *Dana*, 516; *Constitution Ky.*, art. 13, sec. 2; *Ib.*, art. 13, sec. 14.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

By an act of the Legislature, approved February 13, 1856, (*Session Acts* 1855–6, *page* 292,) George Payne, George Henshaw, Thomas R. Given, James D. Ames, A. L. Churchill, and Willis G. Hughes, and the inhabitants living within the boundary described in a subsequent section of the act, were "incorporated and made a body politic, by the name of the Cypress Pond Draining Company; and they and their successors shall have perpetual succession, and full power and authority to drain, and keep drained, the lands within the boundary hereinafter described, at the costs and charges of the owners and proprietors of the lands within said boundary; and to make all necessary and proper contracts therefor; to sue and be sued, plead and be impleaded, in all courts."

Power is given to the company to appoint all officers and agents necessary to carry into effect the provisions of the act, who are to be under the control of the president and managers of the company, and be removed by the company at pleasure.

The board of managers is made to consist of the persons above named, who, out of their number, are to elect a president, and to have power to fill all vacancies that may occur in the board. The boundary of the territory over which the powers of the corporation are to be exercised is minutely defined, and comprehends an area of 14,621 acres, according to a survey which was subsequently made, as directed in the act. For the year 1856, and each year thereafter for ten years, the company is authorized to collect, on each acre of land within the boundary, a tax not exceeding twenty-five cents per acre, to be fixed by the board, who may cause an assessment to be made of each acre of land within the boundary, and list the same for collection with the sheriff of Union county, who shall collect and pay over the same to the order of the board. The sheriff shall have the same power to collect the taxes that he has to collect executions, and be entitled to the same compensation. With the money thus collected, the board is required to drain certain creeks and ponds within said boundary, in such manner as

they shall deem most practicable. The owners of any land sold under the provisions of the act are to have two years from the day of sale to redeem the same, by paying to the purchaser the amount of the sale, with ten per centum per annum on the amount.

Pursuant to the provisions of this act, a board of managers, consisting of the six persons named, was regularly organized. A tax of twenty-five cents on each acre of land embraced within the designated boundary was assessed, and the tax lists placed in the hands of the sheriff for collection.

The appellees, Hooper and thirty-three others, embraced within the corporate boundary and subjected to taxation under the act, filed this petition in equity, in which they sought to enjoin the company from further proceedings to enforce the collection of the tax, upon the ground that, as to them, the tax so assessed is unjust, unequal, and oppressive, and that the act authorizing it is unconstitutional; that said act was got up and passed without their knowledge or consent; that its passage was procured by persons who own a large quantity of inundated and wet land within said boundary, which is comparatively worthless, but which, when drained as proposed, will be greatly enhanced in value, and it was the object of the owners thus to enrich themselves by reclaiming their lands at the expense of the plaintiffs; that the lands owned by many of the plaintiffs are high and broken, not subject to inundation, and therefore not to be increased in value or otherwise benefited by the proposed draining; that many of them have resided on their farms within the boundary for a great many years, and that the creeks, ponds, and wet lands to be drained have been of no detriment or disadvantage to them in any way.

The defendants, the president and managers of the company, answered, denying that in procuring the passage of the act they were influenced by the motives ascribed to them, but insist that their object was to promote their own interest, at their own ratable expense, and the interest of others. They say the lands of the plaintiffs will be increased in value for agricultural purposes, and the health of the neighborhood improved; that the plaintiffs had knowledge of the intended application

to the legislature for the passage of the act, and that some of them signed the petition for that purpose.

Upon final hearing, the circuit court was of opinion that the plaintiffs were entitled to the relief sought by them, and perpetuated their injunction. From that judgment the company has appealed.

Without undertaking a recapitulation or analysis of the voluminous and somewhat contradictory evidence contained in the record, we deem it sufficient to say that the following facts are satisfactorily established:

1. That the appellees had not, nor had either of them, any agency whatever in procuring the passage of the act of incorporation; nor had they any notice of the intended application to the legislature for that purpose; nor did they ever, before or since the passage of the act, give their assent to its provisions, or consent to be bound by them. The allegations of the appellants upon this point are wholly unsustained.

2. That the appellees, thirty-four in number, are the owners of 5,975 acres of land included within the corporate boundary, and that a very small portion of their lands, if any, will be benefited or improved in value by the proposed draining.

3. That the six managers of the company own, in the aggregate, 3,840 acres within the boundary, much the larger portion of which is low and wet land, subject to inundation, and is consequently of little or no value in its present condition, but will be rendered very valuable by the contemplated draining.

4. That the whole number of the owners of lands within the boundary is about sixty-eight.

Upon the case thus presented the question arises, is the act of incorporation, the enforcement of which is sought to be resisted by the appellees, obligatory and binding upon them?

The corporation created by the act is essentially and strictly private. Its objects and purposes do not even partake of a public nature, but are confined exclusively to the private interests of the persons subjected to its operation.

But the constitutional power of the legislature to impose local taxation for the accomplishment of local purposes, is too well settled to admit of question at this day. The principle

has also been repeatedly recognized by the adjudications of this court that an enactment peremptorily ordering the imposition of such local burthen, would not depend for its validity upon the question whether it had been passed upon the petition of a majority, or less than a majority, of the citizens to be affected by it, or without a petition from any, or merely upon the general knowledge of the legislature. (*Slack vs. Maysville and Lexington R. R. Co.*, 13 *B. Mon.*, 26; *Cheaney vs. Hooser*, 9 *B. Mon.*, 350.)

The power and discretion of the legislature in the matter of local taxation is not, however, unlimited. Ample protection to the citizen against the oppression which might result from the arbitrary exercise of this power, is secured in the clause of the constitution which prohibits any man's property from being taken or applied to public use without just compensation made. (*Art.* 13, *sec.* 14.) This has been justly characterized as the great conservative principle of the constitution, by which the rights of private property are to be preserved from violation under public authority; and for the attainment of so important and valuable an object, this court has felt itself bound to give it a liberal construction. (*Pearce's heirs vs. Patton, &c.*, 7 *B. Mon.*, 167.)

And hence, whatever indisposition this court might and should generally feel to declare that, in any case, the legislative department had abused its discretion or transcended its powers, yet it has never hesitated to apply this constitutional restriction to those cases in which it has been made to appear that it has been disregarded by the law-making power. The legislature have the undoubted right to extend the limits of towns and cities, so as to include adjacent lands, without the consent of the owner; yet, where it has been shown that there was no legitimate necessity for such extension of the town or city boundary, against the consent of the owner of the land included within the boundary as extended, and where the effect and probable purpose on the part of the town or city was to subject it to taxation for its own benefit, it has been pronounced a case of taking private property for public use, in the form of taxation, under color of legislative authority, and

Cypress Pond Draining Company vs. Hooper et al.

the enactment authorizing it declared unconstitutional. (*City of Covington vs. Southgate*, 15 *B. Mon.*, 498.)

The same doctrine was expressly recognized in the case of *Cheaney vs. Hooser, supra*, in which it was held that the constitutional restriction contained in the clause referred to applied to all cases where there was a palpable departure from equality in the burthen as imposed upon the persons or property bound to contribute, or where persons and their property are subjected to a local burthen for the benefit of others, or for purposes in which they have no interest, and to which they should not, therefore, be bound to contribute. " If it be so, no matter under what form the power is professedly exercised, whether it be in the form of laying or authorizing a tax, and whether the operation be to appropriate the property of one or more individuals, without their consent, to the use of the general or local public, or to the use of other private individuals, or of a single individual, the case must be regarded as one coming within the prohibition contained in this clause, or the constitution is impotent for the protection of individual rights of property from any aggression, however flagrant, which may be made upon them, provided it be done under color of some recognized power."

That the record before us presents a case which comes within the principles laid down in the cases cited we are perfectly satisfied. It is clear, upon the facts established by the proof, that the operation and effect of the act incorporating this company, whatever may have been the object of those who procured its passage, is to appropriate the property of the appellees, without their consent, to the use of other private individuals merely ; that a burthen has been imposed upon the appellees without any view to their interest in the objects to be accomplished by it; that it is a case of palpable and flagrant inequality in the burthen as imposed upon the persons and property included within the corporate boundary, and that the appellees are subjected to a local burthen for the private benefit of others, and for purposes in which they have no appreciable interest, and to which they are, therefore, not justly bound to contribute.

We need not comment upon some of the extraordinary provisions of the act of incorporation, by which the six managers named in the act are given full power to assess and appropriate the taxes, to fill all vacancies in their own body, and, in short, to control and manage the entire business of the corporation, the other members having no voice or agency whatever in the management.

For the reasons already stated, we concur with the court below in the opinion that, as to the appellees, the act in question is inoperative and void, and the judgment is therefore affirmed.