FOR THE

## COUNTIES OF FRANKLIN AND HAMPSHIRE, SEPTEM-BER TERM 1866, AT NORTHAMPTON.

PRESENT:

Hon. GEORGE T. BIGELOW, CHIEF JUSTICE.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN, } JUSTICES.
Hon. DWIGHT FOSTER,

## FRANKLIN COUNTY.

INHABITANTS OF WENDELL vs. HENRY L. PRATT & others.

A stream crossed a highway through a culvert which was sufficient to allow the water to pass at all seasons. The highway on each side of the stream consisted of an embankment several feet in height. P. owned the land on both sides of the highway, and entered into a written agreement with H. under which the latter built a dam along the upper side of the highway, to raise a water-power for a mill to be built below the highway, and to be supplied with water through a canal. At the culvert, the dam was made about two feet lower than in other places, in order to allow the water to fall over there and pass through the culvert; and flash-boards were used to close up this aperture, and were kept on or off according as the water in the pond was to be raised or lowered. H. never became the owner of the dam or mill under his contract, and P. afterwards sold them, with his land, to others. A freshet afterwards came, while the flash-boards were on and the gate closed, and broke down the dam and washed away the highway. The town which was bound to keep the highway in repair brought an action against P. and H. and P.'s grantees for the injury, alleging as the cause of it that the dam was unskilfully and negligently built, and had become decayed and ruinous.

*Held*, 1. That if H. built the dam unskilfully, P. was not liable for the want of skill.
2. That neither P. nor H. was liable for an injury caused by closing the gate and the aperture in the dam.
3. That if the dam was built unskilfully or negligently, or had become decayed or ruinous, the grantees by using it would be liable for damages sustained from its breaking away in consequence of such defect.
4. That, under the averments of the declaration, the defendants were not liable for damages sustained in consequence of negligence or want of skill, after the commencement of a freshet, in closing the gate or aperture in the dam.

TORT, against five defendants, Pratt, Haskell, George and Henry Haywood, and Morrill.

The declaration alleged, in substance, that there was in Wendell a highway which the plaintiffs were bound to keep in repair; that in the autumn of 1863 the defendants built a dam upon the upper side thereof, at a place where a brook crossed the highway through a stone culvert, and filled up the culvert so that no water passed through the same, and detained the water of the brook in the dam, and used the same for a water-power for a saw-mill; that the defendants had no right to build the dam upon the highway, or stop up the culvert; that they unskilfully and negligently erected the dam, and did not make it secure against freshets, and suffered it to be out of repair and to become decayed and rotten and weak and insufficient to hold the water and withstand the freshets; that by reason of the erecting of said dam, and by reason of a large quantity of water accumulated therein, and by reason of the unskilful and negligent building of said dam, and by reason of suffering said dam to become decayed and rotten and out of repair and ruinous, in March 1865 the water broke through and broke down the dam, and washed away several rods of the highway; in consequence whereof the plaintiffs have been obliged to expend six hundred dollars in repairing the same.

At the trial in the superior court, before *Vose*, J , the following facts appeared: There was in Wendell a highway, as alleged, which the plaintiffs were bound to keep in repair. In September 1862 the defendant Pratt purchased the land lying upon both sides of the highway, at the place where the brook crossed it, and entered into possession thereof under his deed, and so

remained until June 1864, when he conveyed the same to the defendant George Haywood, who owned the same until the date of the plaintiffs' writ. In September 1863 Pratt entered into a written contract with the defendant Haskell, agreeing to convey to Haskell a mill privilege with sufficient land for a mill yard; also giving a right of way for a canal from the reservoir to the mill site and for a road; also a right to flow the land of Pratt as much as could be done by the existing dam, as long as the mill should be kept in use; also agreeing to give him certain timber for the mill frame, and to lend him $500, as he should need it in building the mill, taking his note for the same, payable in sawing at a specified price. Haskell on his part agreed to build on the land a first class saw-mill, within a specified time; and to saw lumber for Pratt, in preference to others, at certain rates.

The highway ran east and west; and the brook ran to the north. There was in the highway a stone culvert about six feet wide, ten feet high, and eighteen feet long, for the passage of the water of the brook, and this culvert was sufficient for the water at all seasons. The highway on each side of the brook, for some fifteen or twenty rods, was raised up, being raised about ten feet at the brook, and growing less in height to the east and west. There was a stone wall on each side of the highway. This elevation of earth for the highway was formerly used as a dam, but that use had been discontinued for thirty-five years, during which time it had been used exclusively for a highway.

After the execution of the contract above referred to, Haskell built the dam, in 1863, and the evidence did not make it clear whether it was within or without the limits of the highway. The dam was built by placing timbers horizontally against the upper wall of the road, and fastening planks upon them nearly perpendicularly, the planks extending a foot and a half above the top of the road, except at the culvert, where for some four or five feet in width the planks were about two feet lower, being designed to let the water fall over there and pass through the culvert. The south end of the culvert was thus blocked up and

obstructed, so that the water could not pass through it except as above described.   Two flash-boards were used to close up this aperture, which were kept on or off according as the water in the pond was to be raised or lowered.   When both flash-boards were on, they came up even with the top of the dam.   The water flowed back so as to cover some twenty-five or thirty acres.

A saw-mill was built at the same time, about fifty rods north of the highway, and was operated by water taken through a canal from the pond.   The saw-mill was carried on, after Pratt's deed to George Haywood, by the two Haywoods and Morrill, as a firm ; and while they were so carrying it on, in the spring of 1865, the water rose from rains and the melting of the snow, and large quantities of it accumulated in the pond, two flash-boards being then on, and the water overflowed at the west end of the dam and broke down and carried away the whole of it, and washed away several rods of the highway, which the plaintiffs were obliged to repair.   The stream usually rose quickly. On the day before the dam gave way, Morrill was at the mill, and when he left at night both flash-boards were on, and it was then thawing fast and raining.   He reached the dam about seven o'clock the next morning, and found both flash-boards on, and the gate down, and immediately ordered the flash-boards to be removed and the gate raised ; but it was too late.   There was other evidence tending to show negligence in allowing the flash-boards to remain on, and the gate to be closed, at that time.

The plaintiffs had never notified either of the defendants that the dam was a nuisance.

Pratt testified that he assumed no control or direction in building the dam; that he had no control over the premises after giving possession thereof to the Haywoods and Morrill; that when he left there was not much of a pond, most of the water having been drawn off through another opening east of the culvert, where the gate was open; and that Haskell never performed his part of the written contract, and therefore never obtained a deed under the same; and that there was no gate at the upper end of the culvert.

The plaintiffs requested the court to instruct the jury that, as Pratt owned and used the premises and dam, from the erection of the dam in 1863 until the sale by him in 1864, he was liable for the damages sustained by the plaintiffs; that Morrill and the two Haywoods were liable, as continuers and maintainers of the nuisance in the highway; that all owners of the premises, from the time of the erection of the dam, and all who occupied the same at the time of the injury, were liable; that the occupiers of the same at the time of the injury were liable, whether negligent or not; that Haskell also was liable; and that the defendants were liable, if they did not exercise due care in removing the flash-boards or raising the gate.

The judge declined so to rule; and instructed the jury that as Pratt had conveyed away his interest long prior to the injury, and as there was no evidence to show that he or Haskell had anything to do with the property or business when the dam was carried away, the plaintiffs could not recover against them; that the plaintiffs were entitled to recover against the other defendants, if the jury should be satisfied that the dam was not originally constructed in such a manner and of such materials as ordinary prudence and skill required, having regard to the particular locality, the rise and capacity of the stream, its liability or otherwise to frequent or extraordinary freshets, and the amount of power intended to be derived from the dam when built, or if after its construction it was not kept and maintained in such condition and repair as ordinary and reasonable prudence and care called for, having regard to the same elements to determine what reasonable prudence and care required; that if there was no want of such judgment, care and prudence, either in the original construction or maintenance of the dam, the defendants were not liable; and that, under the pleadings, the question whether the injury was caused by negligence or want of skill in the management of the gate and flash-boards after the freshet commenced was not open.

The jury returned a verdict for the defendants; and the plaintiffs alleged exceptions.

*W. Griswold,* for the plaintiffs.  The dam was a nuisance.

3 Bl. Com. 215. Pratt was responsible for its erection, on the facts stated. Under the contract with Haskell, it was conditional whether the latter would ever become the owner, and in point of fact he never did. It is immaterial whether or not the dam was in the highway. In either case, the defendants are liable. *Oakham* v. *Holbrook*, 11 Cush. 299. Washburn on Easements, 571, 573. And an action may be maintained by the town to recover the damages. *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24. *Oakham* v. *Holbrook*, and Washburn on Easements, above cited. All the defendants are liable; Pratt and Haskell for creating or causing, and the other defendants for continuing the nuisance. *Staple* v. *Spring*, 10 Mass. 72. *Norton* v. *Volentine*, 14 Verm. 239. *Holmes* v. *Wilson*, 10 Ad. & El. 503. Pratt is liable for an injury after conveying away the premises, as well as before. *Plumer* v. *Harper*, 3 N. H. 88. *Woodman* v. *Tufts*, 9 N. H. 88. *Waggoner* v. *Jermaine*, 3 Denio, 306. It was not necessary to notify those who continued the nuisance to remove it. *Norton* v. *Volentine*, above cited. Morrill and the two Haywoods are liable for negligence in not removing the flash-boards and raising the gate sooner.

*E. E. Lyman*, for the defendant Pratt. The jury having found that the dam as erected was sufficient, it is only necessary to consider whether Pratt is liable for erecting a nuisance. The dam was not built by him, or under his direction, but by Haskell; and Pratt is not liable. *Earle* v. *Hall*, 2 Met. 353. *Hilliard* v. *Richardson*, 3 Gray, 349. *Overton* v. *Freeman*, 11 C. B. 867. *Ellis* v. *Sheffield Gas Consumers' Co.* 2 El. & Bl. 767.

*D. Aiken*, for the defendants Morrill and the two Haywoods. There is a difference between the erection and the continuance of a nuisance. Damages cannot be assessed in the same action against one defendant for its erection, and another defendant for its continuance. They are separate causes of action. But there is a fallacy in saying that this was a nuisance at all. The defendant Haywood owned the whole property, including the highway. As against the town, how can this dam be a nuisance? If it were so, the town might have abated it, and cannot maintain an action for its continuance until after notice to

remove it. *Woodman* v. *Tufts,* 9 N. H. 88. *Plumer* v. *Harper*
3 N. H. 88. *O'Brien* v. *Norwich & Worcester Railroad,* 17
Conn. 102. *Johnson* v. *Lewis,* 13 Conn. 303. The only remedy
for the plaintiffs is by indictment or suit in equity. There being
no allegation of negligence during the freshet, the jury were
rightly instructed in that particular.

CHAPMAN, J. If upon the facts stated in the bill of excep-
tions the plaintiffs have any cause of action against any of the
defendants, it is for obstructing the passage of the stream
through the culvert, during the time of the freshet that occurred
in April 1865. Up to that time no cause of action had accrued.
If there had been a nuisance, it was a public nuisance merely;
and for this, a private action does not lie.

The jury were rightly instructed that there was no evidence
to maintain the action against the defendants Pratt and Haskell.
The declaration sets forth the cause of the injury as follows:
" And the plaintiffs say by reason of the acts and doings of the
defendants, the erecting and building of said dam, and by rea-
son of a large quantity of water accumulated therein, and by
reason of the unskilful and negligent building of said dam, and
by reason of suffering and permitting said dam to become de-
cayed and rotten and out of repair and ruinous, on or about the
third day of March last past the water in said dam broke
through," &c.

The mere fact of building the dam being laid out of the case,
we come to the allegation of its being built unskilfully and neg-
ligently. Pratt would not be liable for this; for it was built by
Haskell, under a contract by which he was to be the proprietor
on certain terms. If he did the work unskilfully and negli-
gently, the doctrine *respondeat superior* would not be applicable
to Pratt. *Earle* v. *Hall,* 2 Met. 353. *Hilliard* v. *Richardson,*
3 Gray, 349, 366. *Linton* v. *Smith,* 8 Gray, 147. *Brackett* v.
*Lubke,* 4 Allen, 138.

There is, also, another reason why neither of them would be
liable in this action. Pratt sold the property to George Hay-
wood in June 1864, and left it the following December. When
he left, the dam did not in any degree obstruct the flow of water

through the culvert. It does not appear that it had ever, up to that time, been so obstructed as to do any private damage to the plaintiffs. This was not therefore such a case as that of *Roswell* v. *Prior*, 12 Mod. 635, where one erected a private nuisance on land, and then assigned the land with the nuisance existing upon it. Haskell had abandoned the premises still earlier; and neither of them could be liable for what might be unlawfully done at a subsequent time by later owners or occupants.

The jury were also rightly instructed as to the liability of the other three defendants, namely, " that the plaintiffs were entitled to recover, if the jury should be satisfied that the dam was not originally constructed in such a manner and of such materials as ordinary prudence and skill required, having regard to the particular locality, the rise and capacity of the stream, its liability or otherwise to frequent or extraordinary freshets, and the amount of power intended to be derived from the dam when built, or if after its construction it was not kept and maintained in such condition and repair as ordinary and reasonable prudence and care call for." This instruction is correct, because, if the dam was thus defective, these defendants would be guilty of negligence in stopping the flow of the stream so as to fill such a dam with a pond of water, and thus the injury would have occurred by reason of their negligence.

The jury were further instructed that " if there was no want of such judgment, care and prudence, either in the original construction or maintenance of the dam, the defendants were not liable; that, under the pleadings in this case, the question whether the injury was caused by the negligence or want of skill in the defendants or their agents in the management of the gate and flash-boards after the freshet commenced was not open in this action."

This is also correct; for if the plaintiffs can recover, it must be upon the allegations in their writ, and in the writ there are no allegations of a private wrong to the plaintiffs, except such as sprung from the insufficiency of the dam arising from unskilfulness in its structure, or suffering it to get out of repair and go to decay. The jury having found for the defendants on these

two points, the plaintiffs had made no allegation to sustain the real merits of their case, even admitting that there was evidence sufficient to sustain the action on account of the acts of the defendants at or about the time of the freshet.

The jury having been correctly instructed on these points, there was no occasion to instruct them further in respect to the prayers for instructions which were presented by the plaintiffs.

*Exceptions overruled.*