CASE 90.—ACTION BY MARY E. CARRITHERS AND OTHERS
AGAINST THE CITY OF SHELBYVILLE TO EN-
JOIN IT FROM A PROCEEDING TO EXTEND ITS
BOUNDARY OVER THEIR LAND.—October 23.

# Carrithers, etc., v. City of Shelbyville

Appeal from Shelby Circuit Court.

R. F. PEAKE, Circuit Judge.

Judgment for defendant, plaintiffs appeal. Af-
firmed.

1.   Constitutional Law—Equal Protection of the Laws.—A woman
is a person, and so is a corporation, within the contemplation
of section 1 of the fourteenth amendment to the Federal
Constitution, and entitled to the equal protection of the laws.

2.   Statutes—Enactment—Assent of People Affected.—Unless the
Constitution so requires, no legislative act is dependent for
its validity on the assent of the people whom it affects.

3.   Municipal Corporations—Annexation of New Territory.—The
creation of or annexation of new territory to a town is a
matter within the sole discretion of the Legislature, and
does not in any manner depend on the will of a majority or
any of the inhabitants living within the territory.

4.   Same.—The act of incorporating towns and enlarging or re-
stricting their boundaries is legislative and political, and in
its exercise of discretion in such matters the Legislature has
plenary power.

5.   Constitutional Law—Municipal Corporations—Enlargement of
Territory—Equal Protection of the Laws.—Ky. Stats., 1903,
section 3483, provides that whenever it shall be deemed
desirable to annex any territory to a city of the fourth class,
or to reduce the boundaries thereof, the board of council
shall by ordinance accurately define the boundary of the
territory proposed to be annexed or stricken off, that the
ordinance shall be published or posted, etc., and also pro-
vides for a protest by resident voters of the territory to be
affected.   Held, That the statute was not violative of the

vol. 126—49

fourteenth amendment to section 1 of the Constitution of the United States by reason of the fact that some of the landholders affected might be women, or corporations.

J. C. BECKHAM & SON for appellants.

The question involved in this record is whether section 3483 of the Kentucky Statutes is or is not in conflict with section 1, article 14, of the amendments to the Constitution of the United States, in that it denies to these appellants, all of whom are persons and citizens, but none of whom are voters, the equal protection of the laws and in that it abridges their privileges and immunities, and in that it deprives them of their property without due process of law.

### AUTHORITIES CITED.

Yick Wo. v. Hopkins, 118 U. S. Supreme Court Reports, p. 356; Barbier v. Connolly, 113 U. S. Supreme Court Reports, p. 27, and Soon Hing v. Crowley, 113 U. S. Supreme Court Reports, p. 703; San Mateo case, 13 Fed. Rep., 722; Santa Clara Co. v. Southern Pacific Railroad, 18 Fed. Rep., 385; Boyd v. Frankfort, 25 Ky. Law Kep., 1315.

P. J. BEARD for appellee.

There is nothing before this court but a moot court case, the simple question as to whether section 3483 is constitutional or not; and the determination of this question can not affect the status or rights of either appellants or appellee. There are no proceedings pending in the case of the city to be enjoined, nor could the determination of this question, set aside or affect the judgment entered in the action of the city. We think this position comes directly within the rule laid down by this court in the following cases:

Finley v. Smith, County Clerk, 28 Ky. Law Rep., 564.

King v. Tilford, 24 Ky. Law Rep., 1270.

Conn v. Desha, 24 Ky. Law Rep., 1400.

"A reversal now would accomplish nothing; an affirmance would benefit nobody. The rule is that where pending an appeal an event occurs which of necessity renders any judgment which might be pronounced ineffectual, the appeal will be dismissed."

AUTHORITIES.

Section 3483, Ky. Stats., 1903 edition; section 3483, Ky. Stats., 1899 edition; Finley v. Smith, 28 Ky. Law Rep., 564; King v. Tilford, 24 Ky. Law Rep., 1270; Conn v. Desha, 24 Ky. Law Rep., 1400; Gaskin, etc., v. City of Georgetown, 26 Ky. Law Rep, 89; City of Lebanon v. Creel, 22 Ky. Law Rep., 865; Guenther & Bro .v. American Steel & Hoop Co., 25 Ky. Law Rep., 795; Am. & Eng. Ency. of Law, vol. 10, 289.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Affirming.

The city of Shelbyville, one of the old cities of this State, is a city of the fourth class, thrifty and growing. It proposed by proceedings conforming to section 3483, Ky. Stats. 1903, to enlarge its territory by including within the corporate limits of the city a certain boundary which embraces real property owned by appellants and others; some of the latter being voters. This suit was filed in the circuit court to enjoin the city from proceeding in the matter upon the ground that the statute violates section 1 of the fourteenth amendment to the Constitution of the United States, and is therefore void. The appellants are all women. They, with certain corporations who joined as plaintiffs in the suit in the lower court, own unimproved lands within the territory proposed to be annexed to the city, and which was not within any city or town when the proceedings were begun. The complaint is that to take the lands of appellants into the city will add a burden of municipal taxation without benefit; and that, as the statute regulating the procedure for adding to the boundaries of a city discriminates against women and all other persons affected who are not voters, they are not afforded equal protection of the laws, inasmuch as the statute pro-

vides that voters only may make defense to the proceedings, if there are voters in the territory to be affected. A demurrer to the petition was sustained, and the plaintiff's prayer for relief was denied by the circuit court.

For the more convenient study of the subject, the existing statute, which is the authority for the city's procedure and the subject of appellant's complaint, is set forth at length as follows: "The boundaries of cities of the fourth class shall, until changed as herein provided, remain as now established by law. Whenever it shall be deemed desirable to annex any territory to a city in this class, or to reduce the boundaries thereof, the same may be done in the following manner: The board of council of such city shall, by ordinance, accurately define the boundary of the territory proposed to be annexed or stricken off. Such ordinance shall be published for not less than three weeks in a newspaper in such city or county; if there be no newspaper published in the city or county, the ordinance shall be advertised by handbills, to be posted for at least fifteen days at four or more public places in the city, and at the same number of the most public places within the territory proposed to be annexed or stricken off. Within thirty days after the adoption, publication and advertisement of such ordinance, a petition shall be filed in the circuit court of the county within which said city may be situated, in the name and on behalf of the city, setting forth the passage, publication and advertisement of such ordinance, the object and purposes thereof, together with an accurate description by metes and bounds of the territory proposed to be annexed to or stricken from the city, and praying for a judgment of the court to annex said territory to or strike same from

the city, as the object may be.  The said petition shall
be filed not less than twenty days before the first day
of the next succeeding term of the circuit court in
that county.  Notice of the filing of the same shall
be given in the same manner as provided herein for
notice of the passage of said ordinance.  If no de-
fense be made at the first term of the court after
the filing of said petition and notice of same as herein
provided and the court shall make no order for grant-
ing further time for making defense the court shall
render a judgment annexing or striking off the pro-
posed territory as the objects of the proceedings may
be.  But at the first term of the circuit court or within
the time fixed by the court by its order any one or
more of the resident voters of the territory proposed
to be annexed or stricken off may file a defense in
said proceedings setting forth the reasons why such
territory, or any part thereof, should not be annexed
to the city, or why the limits of the city should not
be reduced.  The case shall be tried by the court
without the intervention of a jury.  If the court, upon
hearing, be satisfied that less than a majority of the
resident voters of the territory sought to be annexed
or stricken off have remonstrated against the pro-
posed extension or reduction, and that the proposed
extension or reduction of the limits of the city, as
the case may be, will be for the interest of the city,
and will cause no material injury to the owners of
real estate in the limits of the proposed extension or
reduction, it shall so find, and the proposed extension
or reduction shall be decreed or adjudged.  But if the
court shall find that a majority or more of the resi-
dent voters in the territory to be affected or the owner
or owners of said property, if there be no resident
voters, remonstrated against such change, and that

said change will cause material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find, and said extension or reduction shall be denied. If the judgment of the court is adverse to the proposed change, no further effort to annex or strike off the territory so proposed shall be made within two years after the entering of the judgment. Costs shall follow the judgment, and no appeal shall lie from the judgment of the circuit court. If the judgment in such proceedings be in favor of the city, it shall be certified by the clerk of the court to the board of council and entered on the records of the board, and the board shall thereupon, by ordinance, annex to or strike from the city the territory described in the judgment: Provided, the circuit court shall not have jurisdiction of such proceedings, unless the required publication or advertisement of the ordinance proposing the extension or reduction of the limits of the city contains notice of the proposed proceedings in such court, proof of which publication, or advertisement may be made by affidavit filed in the proceedings: Provided, however, that the provisions of this act shall not be construed as interfering with the rights of any litigant in or growing out of any action now pending in any court of this Commonwealth under the act to which this is an amendment.'' This section is the statute amended as of March 22, 1902. Before that amendment other features existed which have been eliminated. The precise question here presented has not heretofore come before this court, nor, so far as we have been able to find, before any other court for decision. Certain features of the question have been passed upon by this and other supreme courts, which will be noticed in the course of the opinion.

Of course, a woman is a person, and so is a corporation (Santa Clara County v. Southern Pacific R. Co. (C. C.) 18 Fed. 385), within the contemplation of the fourteenth amendment to the federal Constitution. If either is denied the equal protection of the law by following the statutory proceeding for annexing territory to a city, then the statute must be declared invalid. A very brief study of the nature of our municipal corporations will materially aid in the determination of the question presented. Our system of city government is adopted from the English, which was probably fashioned upon the Teutonic town. In both the former the will and welfare of the landowner were consulted. Indeed, the Teuton ceroil and the English burgher were deemed the sole beneficiaries of the municipal privileges. Green's Short Hist. Eng. People, section 1, p. 3. After the Conquest, king and the nobility overbore the simple freedom of the towns, and sold it back to the inhabitants in consideration of revenues paid into the royal treasury. The liberties, or privileges so ceded to the body of the burghers, were evidenced by a grant in the nature of a charter, whence was derived the corporate charter of the grantee, the collective citizens as a town. The original idea seems to have been just the reverse of that obtaining at this day. Then the towns were supposed to be conducted for the personal benefit of its citizens only, while now it is an arm of the state government, governing in its name, and by its authority solely, for the benefit of the state. Naturally enough no town was then set up as a corporation involuntarily, or save by the request of the inhabitants concerned. Acceptance was therefore essential to make operative a charter granted by the king. 1 Kyd. Corp. 61. He had no

power to impose political obligations on any person or community, except in the form of conditions, nor to compel the acceptance of any charter. President, etc., v. Society, etc., 24 N. J. Law, 385. When Parliament became supreme, and usurped in a sense the prerogatives of the crown in the creation of municipal corporations, it, in legislating for the public, granted charters to towns and cities at its pleasure. No assent of the inhabitants was necessary in that case; for the charter of a corporation created by Parliament was an act of Parliament, and no assent is requisite to make an act of Parliament operative. But even Parliament has been generally considerate of the will of the inhabitants upon whom the charters were to operate, and a provision was nearly always made for their assent in some form or other. The recent English statutes providing general laws for local government of towns and cities so require. 1 Dill. Munic. Corp. section 34; Municipal Corporation Act of 1882. As this country was settled by Englishmen, who brought over the customs and laws of the mother country, it was to be expected that substantially the same system of town government was instituted over here. After the Revolution, the sovereignty of the king and Parliament was lodged in the state. Thereafter it granted charters to the towns, not as privileges conferred by favor or for price, but as a part of a system conserving the principles of liberty as found in self-government. What was said by Mr. Justice Brown in People v. Draper, 15 N. Y. 532, can as well be applied to the conditions in Kentucky: "When the present Constitution was formed, the entire territory of the State was separated and appropriated by its civil divisions, its counties, cities, and towns. These civil divisions

are coeval with the government.' The State never existed a moment without them. All our thoughts and notions of civil government are associated with counties, cities, and towns. They are permanent elements in the name of the government. They are institutions of the State, durable and indestructable by any power less than that which gave being to the original law. They are, however, subject to control and regulation by the Legislature. It may enlarge or circumscribe their territorial limits, increase or diminish their members, separate them into parts, and annex some of the parts to others; but they must still assume the form and be known and governed only as counties, cities, and towns. The State at large is and ever has been an aggregate of these local bodies." Thus we see that the creation of a municipal corporation is always and essentially a political act. Whether it will be done or not depends solely on the judgment and will of the political department of the government, the Legislature. And no legislative act, unless the Constitution so requires, is dependent for its validity upon the assent of the people whom it affects.

The first three Constitutions of this State made no reference to the incorporation of towns and cities. That was done by the Legislature as an incident of the powers of the sovereign state lodged in its political department. Charters were then granted to cities and towns by special act of the Legislature, as anciently was done by special act of Parliament. The Legislature judged of the necessity and propriety of the act. It considered each separate case on its merits, and gave to the municipality such territory and such form of government as was deemed proper, and changed each at will. The Convention

of 1891, which framed the present Constitution, determined to have an end to all special legislation. Its evils, not necessary to recount here, had provoked the people. Special legislation was inexorably prohibited respecting all subjects where a general law could apply, and particularly as to the creation of cities and towns and their government. Sections 59-159, Const. The Legislature was required to classify all the towns and cities of the Commonwealth, and to enact general laws for their government. The Legislature did so classify the cities and towns, and has provided for their government by general laws. The section of the statute under consideration is part of the general laws for the government of cities of the fourth class. It could never have been contemplated that the cities and towns were to forever remain in size territorially as the Constitution found and left them. That they would grow in time, and would necessarily require new territory to accommodate their expansion, was known. In the enactment of the general laws, this feature of the situation must of necessity have been presented to the minds of the Legislature. Inasmuch as no two cities or towns, much less all of a class, would probably grow at the same rate, or require even equal territory at the same time, and as special acts could not be now passed to meet the exigency of each case as it arose, some plan open to all, and flexible enough to accommodate the particular needs of each town and city, must be provided by general law. It would scarcely be safe to leave the matter to the sole discretion of the municipal legislative boards (as is done in certain class cities in Missouri, it seems). So, after fixing the general conditions upon which the Legislature was willing to grant an extension of the corporate boundary

(or to restrict it as the case might be), some tribunal must be selected or created to whom should be confided the responsibility of determining for the Legislature whether the general conditions it had imposed had been complied with. Kentucky is not the pioneer in either its plan of generalizing the incorporation of municipalities or of relegating some essential fact in the process of incorporation, to some tribunal other than the Legislature, for ascertainment. Nearly all the states now prohibit special legislation, and require the incorporation of municipalities to be by general laws. In some of the states the question of annexation is left to a vote of the territory to be affected, as, for example, in Illinois (Village of N. Springfield v. City of Springfield, 140 Ill. 165, 29 N. E. 849), in Texas (Graham v. City of Greenville, 67 Tex. 62, 2 S. W. 742; State v. Waxahachie, 81 Tex. 626, 17 S. W. 348), and in Arkansas (Vogel v. Little Rock, 55 Ark. 609, 19 S. W. 13). Still others leave the ascertainment of certain facts to the courts of general original jurisdiction in the county wherein the town is situated. It is so in Nebraska (Gottschalk v. Becher, 32 Neb. 653, 49 N. W. 715), and in Pennsylvania (Appeal of Brinton, 142 Pa. 511, 21 Atl. 978), and in Iowa (Ford v. Town of North Des Moines, 80 Iowa, 626, 45 N. W. 1031), and in Kansas (Hurla v. City of Kansas City, 46 Kan. 738, 27 Pac. 143). In some of these cases the question was raised that it was incompetent for the Legislature to so delegate its powers, but the courts held, though not with entire unanimity, that it was not a delegation of the powers. In this State that question was presented in Clarke v. Rogers, 81 Ky. 43, 4 Ky. Law Rep. 929. The Legislature had enacted a new charter for Flemingsburg, but provided that it should become effective only

upon its acceptance by a majority of the legal voters of the town. In the suit involving the constitutionality of the provision, the court observed that, while the Legislature had the right to substitute the new charter for the old without consulting the popular will on the subject, yet it could legally submit the charter to the people directly concerned. It was said: "The Legislature cannot delegate its power to make laws, but when enacted whether or not the law shall become operative may be made to depend on the popular will"—citing Cooley, Const. Lim. pp. 143-230. Why may it not be made to depend as well upon any other fact? And why may it not delegate to some ministerial or judicial officer the duty of ascertaining the existence of the requisite fact? In the existing statute it is to be observed that the popular will is to be consulted, and to be given weight, as well as the fact whether the benefits and burthens equitably justify the proposed extension or restriction. No other tribunal is so well equipped to develop the facts, and to ascertain the conditions named by the Legislature as those upon which its grant shall take effect, as are the courts. The questions are quasi judicial, but are not matters that ever were litigable in any court as a matter of right. In truth, the court in the particular proceeding is not in any sense dealing with the legal rights of persons who live or own property in the affected territory; for, as was held by this court in Cheaney v. Hooser, 9 B. Mon. 330, the creation of or annexation of new territory to a town is a matter within the sole discretion of the Legislature, and does not in any manner depend upon the will of a majority or any of the inhabitants living within the territory. If the Legislature does consult their wishes, as it well

may, it acts for its own advice and guidance, and not in deference to any legal right of the citizen.

The question of benefits and burthens in the proposed annexation cannot be said to involve a justiciable right of the individual taxpayer. But it is unquestionably a proper subject of consideration in determining whether the municipal territory be extended or reduced. It is impossible now for the Legislature to pass upon each proposed annexation or diminution of territory. Either a hard and fast rule, certain to bear onerously in many instances, must be adopted by general law, or by general law the ascertainment of the fact whether the benefits and burdens are counterpoised, must be found to exist by some other tribunal. We are unable to perceive a distinction between the ascertainment of that fact by the court and the ascertainment of the majority of the voters' wills by a ministerial officer appointed to hold an election, as Cooley says may be done. Cooley, Const. Lim. pp. 143-230. The Legislature is prohibited from granting incorporating charters of any kind by special laws. All incorporations in this State, private as well as municipal, are now required to be by general laws. Yet private corporations are granted charters by specially selected tribunals upon the ascertainment by them of certain requisite facts. No one supposes now that that is a delegation of legislative authority. Nor does it confer legislative power upon the courts. Many acts of government are so complex as to partake of some or all the features of the three—legislative, executive, and judicial. Yet there are certain controlling marks by which each act is relegated to its own department. It is not infrequent that an act of the Legislature is not effective until and unless some other department

set it in operation upon its ascertainment of a precedent condition submitted to it by the Legislature. But the finding of the fact is not legislation. Nor is it necessarily judicial, although it may be such as not to fall entirely without the legitimate domain of a judicial forum. A certain test of the act required of the circuit court under the statute in hand is: Could it have been done by any other department of government, without invading the prerogative of the judiciary? Undoubtedly it is such an act as the Legislature has always exercised jurisdiction over. We have seen it is such also as may be settled by a vote taken under executive supervision, if the Legislature so provide. From whatever point it is viewed, the subject returns to this: The act of incorporating towns, and enlarging or restricting their boundaries, is legislative and political. In its exercise of discretion in such matters the Legislature has plenary power. It is no infringement of any constitutional right of any person that he is not first consulted before the power is exercised, or if it is allowed to be exercised upon the petition or with the consent of a selected class, as for example voters or property holders. One illustration, of everyday occurrence, is selected. Street improvements are deemed legislative matters in the first instance; yet the executive performs them in part, and the courts in part—the latter, in correcting errors of the council or of the executive department, after the work has been done and accepted, although such errors pertain solely to matters of legislation or executive act. Finally, the imposition of taxes for municipal purposes, as well as the annexation of territory to the town, is a political matter. Frequently the Legislature submits such matters to the voters. If it does, a majority fastens

the tax upon all, the unwilling as well as those who had no voice in the election, such as women, infants, and corporations, and those not voting. In no event is it a taking of private property for public use, as that term is used in the Constitution. Cheaney v. Hooser, supra. As the Legislature might have had the condition upon which the additional territory was to be incorporated into the city to be ascertained without the right of anybody to be heard in court, or even by a vote of qualified male voters, appellants are not denied the equal protection of the laws because they were not admitted to defend the proceeding in the court.

The judgment of the circuit court is affirmed.