THE CAROLINA-VIRGINIA COASTAL HIGHWAY, PLAINTIFF, v. COASTAL TURNPIKE AUTHORITY; WM. F. FREEMAN ENGINEERS, INC.; DeLEUW, CATHER & COMPANY; AND HARRY McMULLAN, AS ATTORNEY-GENERAL OF NORTH CAROLINA, DEFENDANTS.

(Filed 30 January, 1953.)

1. Constitutional Law § 8c—

The lawmaking power is the exclusive function of the legislative department, and the General Assembly may not delegate such power to any other department or body except municipal corporations. Constitution of North Carolina, Articles VII, VIII, IX.

2. Same—

While the General Assembly may delegate to administrative boards or governmental agencies the authority to find facts determinative of whether

or not a law should apply or another agency of government should come into existence, provided the Legislature prescribes adequate standards to guide the administrative board or governmental agency, the General Assembly may not delegate the power to apply or withhold the application of a law in the absolute and unguided discretion of an administrative board or governmental agency or confer upon it the power to make law or determine questions of public policy.

**3. Municipal Corporations § 1—**

While a municipal corporation is ordinarily an agency of the State for self-government of a particular territory, in its broader sense it includes any corporation formed for purely governmental purposes which is an agency of the State.

**4. Same: Constitutional Law § 8b—**

The creation of a municipal corporation or the enlargement or diminution of its powers, or its dissolution, is a political function which rests solely in the Legislature, and while the General Assembly may delegate by general law the power to a court or other agency to ascertain the existence of facts upon which such questions are to be determined in accordance with standards set up in the act, it may not delegate the authority to determine questions of public policy or the exercise of any unguided discretion in regard thereto.

**5. Same—**

The provisions of G.S. 136-89.1 *et seq.*, delegating to the Municipal Board of Control the power to determine not only whether the requirements of the act for the creation of a municipal corporation for the purpose of constructing and operating toll roads had been complied with, but also the power to determine whether the proposed toll road is in the public interest and therefore whether or not the corporation should be created, *is held* unconstitutional as an attempted delegation of the naked and arbitrary power to determine a question of public policy without standards of legislative guidance of any kind. Constitution of North Carolina, Article II, section 1.

**6. Statutes § 2—**

Chap. 993, Session Laws of 1951, amending the provisions of Chap. 1024, Session Laws of 1949, by limiting the territory for the creation of a corporation for the construction and operation of toll bridges to five counties of the State transforms the statute into a "local act" relating to ferries or bridges within the meaning of Article II, section 29, of the State Constitution, and is void.

**7. Taxation § 19½—**

A corporation created under the provisions of G.S. 136-89.1 *et seq.* for the purpose of constructing and operating toll roads and bridges is not a municipal corporation within the meaning of Article V, section 5, of the Constitution of North Carolina, and its property may not be exempt from taxation, since the exclusive direction and control of such corporation and its power to fix charges and collect toll fees is vested in a self-perpetuating body created at its inception without governmental control of any kind, and therefore it is not a governmental agency but a private corporation.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Hatch, Special Judge,* at Chambers in Raleigh, 17 October, 1952. From WAKE.

Civil action under the Declaratory Judgment Act (G.S. 1-253 *et seq.*), to determine whether the plaintiff is a municipal corporation with power to issue tax-exempt bonds and construct and operate as a tax-exempt project the toll road and toll bridge referred to in the complaint, involving questions respecting the constitutional validity of Chapter 1024, Session Laws of 1949, as amended by Chapter 993, Session Laws of 1951, now codified as G.S. 136-89.1 to 136-89.11.

These in substance are the pertinent allegations of the complaint:

1. That the plaintiff is a municipal corporation organized under Chapter 1024, Session Laws of 1949, entitled "An act to authorize the organization of municipal corporations for the purpose of constructing and operating toll roads."

2. That by virtue of an order of the Municipal Board of Control (a three-member administrative agency of the State, G.S. 160-195 *et seq.*) dated 3 June, 1949, the plaintiff municipal corporation was organized for the purpose of constructing and operating a toll road in the counties of Dare and Currituck, running from a point north of Nags Head where State Highway No. 158 intersects the road leading to Duck, and following the Duck road about three miles, thence curving toward the Atlantic Ocean and following the coast line, maintaining a distance of from 300 to 600 feet west of the high water mark of the Atlantic Ocean, to the North Carolina-Virginia State boundary line.

3. After the plaintiff was organized as a municipal corporation, Chapter 1024, Session Laws of 1949 was amended by Chapter 993, Session Laws of 1951 (G.S. 136-89.1 to 136-89.11) ; that pursuant to the amendatory act, the Municipal Board of Control, on petition of the plaintiff, entered an order 5 August, 1952, amending the original charter of the plaintiff by conferring on it power and authority to build and operate a toll bridge in Dare County to span Croatan Sound, so as to connect Roanoke Island with Manns Harbor.

(Copies of all petitions, notices, orders, and other papers in connection with the purported organization of the plaintiff as a municipal corporation and the amendment of its charter are attached to the complaint as exhibits. These documents appear to be adequate in form to meet the procedural requirements of the statute. This being so, they are omitted herefrom as not being pertinent to decision.)

4. That in furtherance of its plan to construct the proposed toll road and toll bridge, the plaintiff has entered into contracts with the defendants Wm. F. Freeman Engineers, Inc., and DeLeuw, Cather & Company

for the performance of engineering services in connection with the planning, design, and supervision of the construction of the proposed road and bridge. The plaintiff also has entered into a contract with the defendant Coastal Turnpike Authority whereby the plaintiff has agreed to construct the proposed road to the Virginia State line, and Coastal Turnpike Authority has agreed to construct an extension of the road north of and beyond the Virginia State line to a point at or near Virginia Beach. And plaintiff is about to finance the costs of its road and bridge projects by the issuance of tax-exempt revenue bonds.

5. That a controversy has arisen between the plaintiff and the defendants as to the right of the plaintiff to enter into these contracts, based upon questions respecting (1) the constitutional validity of the statutes under which the plaintiff was organized, and (2) the regularity of the procedure followed in organizing the plaintiff municipal corporation. The defendants have refused to perform their contracts until these controversial questions are resolved.

The defendants by answers admit all factual allegations set out in the complaint, but challenge the constitutional validity of the acts under which the plaintiff is organized, and also deny that the plaintiff has complied with the statutory procedure prescribed for the creation of such corporation. This brings into focus the controlling provisions of the Acts.

Chapter 1024, Session Laws of 1949, under which the plaintiff was originally organized, provides in part:

"Section 1. Any number of persons not less than ten (10) are hereby authorized and empowered to file a petition with the Municipal Board of Control created by G.S. 160-195, for the organization and creation of a Municipal Corporation for the purpose of acquiring rights of way, owning and operating a toll road or highway in the State.

"Sec. 2. The petition shall be presented to the secretary of the Municipal Board of Control and shall set forth the name by which the municipal corporation is to be known and shall describe in a general way the location of the proposed highway or toll road which is to be constructed or acquired, and by giving the names of the owners of the lands over which the said toll road or highway is to be constructed. The said petition shall describe in general terms the nature of the highway to be constructed and the width of the right of way which is desired to be acquired, which shall not exceed a width of one hundred (100) feet.

"The secretary of said board shall thereupon make an order prescribing the time and place for the hearing of said petition before the Municipal Board of Control. Notice of hearing shall be published once a week for four weeks in a newspaper published in or having a circulation in the county or counties where such toll road or highway is to be constructed,

giving notice of the proposal to organize a municipal corporation for such purpose. Such notice is to be signed by the secretary of said board.

"Sec. 3. Any person in any manner interested in the laying out and construction of the said toll road or highway may appear at the hearing of such petition, *and the matter shall be tried as an issue of fact by the Municipal Board of Control,* and no formal answer to the petition need be filed. The board may adjourn the hearing from time to time in its discretion. *The Municipal Board of Control shall determine whether or not the laying out, construction and operation of the toll road is in the public interest* and whether all the requirements of this Act have been substantially complied with *and, if the Municipal Board of Control shall so find, it shall enter an order creating a municipal corporation and fixing* the name of the same, giving it the name proposed in the petition unless, for good cause, it finds that some other name should be provided. (Italics added.)

"Upon the approval of the Municipal Board of Control and the recording of the papers, as above provided, the organization shall become a municipal corporation with such powers and functions as are prescribed in this Act.

"Sec. 4. Within ninety (90) days after the organization of such municipal corporation, *the petitioners for the same shall meet at the courthouse in the county in which the said toll road or highway or some part thereof is located and elect a board of not less than three (3) nor more than seven (7) commissioners which shall act as the governing board of said municipal corporation.* Notice of the time and place of such meeting may be given by any three (3) of the petitioners, *and such board of commissioners, when elected, shall serve for a term of six (6) years from the date of their election or until their successors are duly elected and qualified. The successors to such board of commissioners shall be elected by the commissioners before their term of office expires, and any vacancy in the membership thereof shall be filled by the remaining members of the said commission.* (Italics added.)

"Sec. 5. The board of commissioners of said municipal corporation shall elect a president and secretary thereof and adopt a common seal, said officers to serve for a term of six years or until their successors are duly elected and qualified. Any vacancies occurring in such offices shall be filled by the appointment of the board of commissioners for the unexpired term of the one creating such vacancy."

Sec. 7. Confers power of eminent domain on corporation.

"Sec. 8. That said corporation, when created, shall be operated entirely for the benefit of the public and no person shall receive any profits whatever from the operation thereof, except that the officers and em-

ployees of said corporation shall be paid by the governing board thereof reasonable compensation for services rendered."

Sec. 9. Confers power to issue revenue bonds to finance costs of project.

"Sec. 10. *That all of said bonds and notes and coupons shall be exempt from all State, county and municipal taxation or assessment,* direct or indirect, general or special, whether imposed for the purpose of general revenue or otherwise, and the interest on said bonds and notes shall not be subject to taxation as for income, nor shall said bonds or notes or coupons be subject to taxation when constituting a part of the surplus of any bank, trust company or other corporation. *All the property of the said corporation shall be exempt from all taxation.* (Italics added.)

"Sec. 11. In the event the State Highway and Public Works Commission shall at any time hereafter determine to acquire any toll road or highway which may be constructed by a municipal corporation organized under the provisions of this Act, for the purpose of operating the same as a part of the State highway system, *the State Highway and Public Works Commission shall have a right to acquire the same* and to enter into an agreement with the municipal corporation created under the provisions of this Act for the acquisition of such road or highway, and all rights of such municipal corporation therein, *upon the condition that the State Highway and Public Works Commission shall pay or assume all of the outstanding obligations of such municipal corporation, including any outstanding bonds, incurred or issued in the acquisition of rights of way and construction of such improvements,* and, upon such contract being entered into, all of the right, title and interest of such municipal corporation created hereunder to such toll road or highway shall cease and determine and the same shall become a part of the State highway system, and such road or highway may be operated as a toll road or otherwise, as the State Highway and Public Works Commission may determine." (Italics added.)

The amendatory act, Chapter 993, Session Laws of 1951, provides, among other things:

Sec. 1. Prescribes procedure for amending and extending provisions of charter of any corporation organized under the original act, with direction that "Amendment in this manner may be had to accomplish a change in the location of the proposed highway or toll road, an extension or addition thereto, *the construction of a feeder road or bridge having a direct relationship to the original objective of the formation of the municipal corporation,* or any other accomplishment deemed expedient or necessary by the commissioners of the municipal corporation. (Italics added.)

"Sec. 2.  . . .

"The said municipal corporation, when organized, shall have the following powers:

"1. (a) To adopt by-laws for the regulation of its affairs and the conduct of its business;

"(b) To adopt a corporate seal and alter the same at pleasure;

"(c) To maintain an office at such place or places within the State as it may designate;

"(d) To sue and be sued in its own name;

"(e) *To construct, maintain, repair and operate the toll road, toll bridge or turnpike at such location within the North Carolina Counties of Currituck, Dare, Tyrrell, Hyde, and Carteret as shall be adopted by the municipal corporation;* (Italics added.)

"(g) *To fix and revise, from time to time, and charge and collect tolls for transit over the turnpike constructed by it, without obtaining the consent or approval of any department, division, commission, board, bureau, or agency of the State, and without any other proceedings or the happening of any other conditions or things than those proceedings, conditions, or things which are specifically required by this Act;* (Italics added.)

"(h) *To establish rules and regulations for the use of the turnpike;* (Italics added.)

"2½. Upon the completion of any project authorized under the terms of this Act, the municipal corporation shall file with the Chairman of the North Carolina State Highway and Public Works Commission a report prepared by a certified public accountant, showing all items which were included in the original cost of the project, the schedule of salaries, wages, and operating expenses budgeted for the project, and shall at periodic intervals thereafter, at least once in every year, file an operating statement for the project as prepared by the auditors or accountants of the municipal corporation.

"3. *Revenues. The municipal corporation is hereby authorized to fix, revise, charge and collect tolls for the use of the turnpike and the different parts or sections thereof,* . . . *Such tolls shall not be subject to supervision or regulation by any other commission, board, bureau or agency of the State.* (Italics added.)

"4. The authority of the municipal corporation to construct a toll road or turnpike shall not be limited to the construction of a roadway or highway but shall include the authority to construct a toll road across any body of water, navigable or nonnavigable, *within the Counties of Currituck, Dare, Tyrrell, Hyde and Carteret,* and the State of North Carolina expressly consents to the construction of such toll road or bridge over and across waters within its jurisdiction when the charter of said municipal corporation provides for such construction. (Italics added.)

"Sec. 3. All laws and clauses of laws in conflict with this Act are hereby repealed."

The court below entered judgment on the pleadings adjudging that the challenged statute, both as originally enacted and as amended, is valid and constitutional; that the plaintiff municipal corporation has been duly created and its charter duly amended in compliance with the procedural requirements of the laws of the State of North Carolina; and that the contracts entered into between the plaintiff and each of the defendants, Coastal Turnpike Authority, Wm. F. Freeman Engineers, Inc., and DeLeuw, Cather & Company, are in all respects valid and binding and fully enforceable against the parties thereto.

The defendants excepted and appealed.

*McMullan & McMullan and Reed, Hoyt & Washburn for plaintiff, appellee.*

*John A. Wilkinson for defendants, appellants.*

JOHNSON, J. Our examination of the challenged statute impels the conclusion that it is repugnant to three sections of the State Constitution. For immediate purposes of decision, it would suffice to rest decision on one section only. However, against the eventuality that this would serve only to extend the litigation and lead to further adverse decisions following piecemeal amendatory legislation, we deem it appropriate to discuss the statute in the light of each section of the Constitution which it impinges. We treat them *seriatim*. The questions posed are these:

1. Whether the statute in attempting to authorize the Municipal Board of Control to "enter an order creating a municipal corporation" is invalid as being an attempt to delegate legislative power and authority contrary to the provisions of Article II, Section 1, of the Constitution?

2. Whether the amendatory act limiting the territorial scope of the statute to five of the 100 counties of the State, brings the statute into conflict with Article II, Section 29, of the Constitution, which forbids the General Assembly "to pass any local, private, or special act . . . authorizing the laying out, opening, . . . (or) maintaining . . . of highways. . . . ; (or) relating to ferries or bridges . . . ?"

3. Whether (assuming that the plaintiff may be clothed with corporate existence), in view of the provisions of the plaintiff's charter immunizing it from governmental control, the plaintiff is entitled to tax exemption as a municipal corporation within the purview of Article V, Section 5, of the Constitution?

It will add to clarity of understanding if we keep in mind these facts: (a) The Municipal Board of Control issued the plaintiff's so-called charter under the original act of 1949, before the passage of the amenda-

tory act of 1951; (b) the original act is state-wide in scope, and contains no express power authorizing the construction and operation of toll bridges—its express grant of powers relates only to toll roads; (c) the amendatory act limits the operation of the statute to five counties, and extends the express grant of powers to include toll bridges; (d) after the passage of the amendatory act, the plaintiff's charter was amended in form to confer on it the right to build a toll bridge over Croatan Sound; (e) Croatan Sound is not a link in the proposed toll road—the southern terminus of the proposed toll road is north of Nags Head, whereas Croatan Sound is several miles south of Nags Head and lies between Roanoke Island and the mainland at Manns Harbor.

1. *The question of delegation of legislative power.*—It is a settled principle of fundamental law, inherent in our constitutional separation of government into three departments and the assignment of the lawmaking function exclusively to the legislative department, that (except when authorized by the Constitution, as is the case in reference to certain lawmaking powers conferred upon municipal corporations usually relating to matters of local self-government, Const., Articles VII, VIII, and IX; *Provision Company v. Daves,* 190 N.C. 7, 128 S.E. 593), the Legislature may not abdicate its power to make laws or delegate its supreme legislative power to any other department or body. 11 Am. Jur., Constitutional Law, Sec. 214. See also *Motsinger v. Perryman,* 218 N.C. 15, 20, 9 S.E. 2d 511; *S. v. Curtis,* 230 N.C. 169, 52 S.E. 2d 364, and cases there cited.

However, it is not necessary for the Legislature to ascertain the facts of, or to deal with, each case. Since legislation must often be adapted to complex conditions involving numerous details with which the Legislature cannot deal directly, the constitutional inhibition against delegating legislative authority does not deny to the Legislature the necessary flexibility of enabling it to lay down policies and establish standards, while leaving to designated governmental agencies and administrative boards the determination of facts to which the policy as declared by the Legislature shall apply. *Provision Company v. Daves, supra.* Without this power, the Legislature would often be placed in the awkward situation of possessing a power over a given subject without being able to exercise it.

Here we pause to note the distinction generally recognized between a delegation of the power to make a law, which necessarily includes a discretion as to what it shall be, and the conferring of authority or discretion as to its execution. The first may not be done, whereas the latter, if adequate guiding standards are laid down, is permissible under certain circumstances. 11 Am. Jur., Constitutional Law, Sec. 234. See also *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 22 S.E. 2d 896.

As to this, it may be conceded that the line of demarkation between those essentially legislative functions which must be exercised by the

Legislature itself, and those of an administrative nature, or involving mere details, which may be conferred upon another body or administrative agency, is sometimes vague and difficult to define or discern.  *Provision Company v. Davis, supra.*

Nevertheless, the legislative body must declare the policy of the law, fix legal principles which are to control in given cases, and provide adequate standards for the guidance of the administrative body or officer empowered to execute the law.  This principle is implicit in the general rule prohibiting the delegation of legislative power, and is affirmed by numerous authoritative decisions of this Court.  *Motsinger v. Perryman, supra; Provision Company v. Daves, supra; S. v. Harris,* 216 N.C. 746, 6 S.E. 2d 854; *S. v. Curtis, supra.*  See also Annotation, 79 L. Ed. 474, 487.

In short, while the Legislature may delegate the power to find facts or determine the existence or nonexistence of a factual situation or condition on which the operation of a law is made to depend, or another agency of the government is to come into existence, it cannot vest in a subordinate agency the power to apply or withhold the application of the law in its absolute or unguided discretion, 11 Am. Jur., Constitutional Law, Sec. 234.

In the case at hand we are at grips with the question whether the statute, which invests in the Municipal Board of Control discretionary power to create a municipal corporation for the purpose of constructing and operating a toll road and a toll bridge, fails to lay down adequate standards for guidance, and is for that reason subject to attack as an unwarranted delegation of legislative power.

The term "municipal" relates not only to a town or city as an incorporated territorial entity, but it also pertains to local self-government in general and, in a broader sense, to the internal government of the State. In the latter, broader sense, a corporation formed for purely governmental purposes is a municipal corporation.  *Wells v. Housing Authority,* 213 N.C. 744, bot. p. 750, 197 S.E. 693; *Mallard v. Housing Authority,* 221 N.C. 334, 20 S.E. 2d 281; *Webb v. Port Commission,* 205 N.C. 663, 172 S.E. 377; *Brumley v. Baxter,* 225 N.C. 691, 36 S.E. 2d 281.  See also Const., Article VII, Sec. 7.

But whether a municipal corporation be a unit of local self-government in the sense of being an incorporated territorial area having inhabitants, or a mere governmental agency of the State, clothed with the requisite attributes of government necessary to make it a municipal corporation, in either event such corporation is but a creature, an instrumentality, an agent of the State.  37 Am. Jur., Municipal Corporations, Sec. 4. See also *Lee v. Poston,* 233 N.C. 546, 64 S.E. 2d 835.

This being so, the power to create or establish municipal corporations, to enlarge or diminish their powers, or to dissolve or abolish them altogether, is a political function which rests solely in the legislative branch of the government. 37 Am. Jur., Municipal Corporations, Sec. 7; *Starmount Co. v. Hamilton Lakes,* 205 N.C. 514, 171 S.E. 909; *Webb v. Port Commission, supra; Cox v. City of Kinston,* 217 N.C. 391, 8 S.E. 2d 252; *Greensboro-High Point Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803.

Ordinarily "no delegation of legislative functions is involved in general laws providing for the incorporation of municipal corporations, fixing the conditions on which they may be created, and leaving to some officer or official body the duty of determining whether such conditions exist, . . ." 37 Am. Jur., Municipal Corporations, Sec. 8; *Lyon v. Payette,* 38 Idaho 705, 224 P. 793; *Boone County v. Verona,* 190 Ky. 430, 227 S.W. 804; *Carrithers v. Shelbyville,* 126 Ky. 769, 104 S.W. 744.

"It is generally held that the legislature, in enacting general statutes governing the incorporation of municipal corporations, which describe the conditions precedent to incorporation, may confer upon a court or other agency the power and duty to ascertain the existence of the facts set forth in the statute upon which it will become effective and to see that all legal forms have been complied with. When such facts are found to exist and the required legal forms have been complied with, the law directs the creation of the municipal corporation. If the legislature vests no power in the courts or other body or individual other than to determine the existence of the facts set forth in the law itself, contingent upon the existence of which the law comes into operation, it does not constitute a delegation of legislative power." 37 Am. Jur., Municipal Corporations, Sec. 8. See also McQuillin, Municipal Corporations, 3rd Ed., Vol. 1, Sec. 3.05.

However, by the decided weight of authority, the rule is that "if the statute requires or authorizes the court or other agency to pass upon questions of public policy involved, or to exercise any discretion as to whether the municipal corporation should be created, or to render any other assistance than the determination of facts, there is an attempted delegation of legislative power and the statute is invalid." 37 Am. Jur., Municipal Corporations, Sec. 8; *In re North Milwaukee,* 93 Wis. 616, 67 N.W. 1033.

We come now to test the statute at hand by the foregoing principles. As to the provisions of the statute prescribing (1) the minimum number of persons required to join in the petition to the Municipal Board of Control, (2) the requirements of the petition as to description of the proposed project, listing of the names of the persons across whose lands the toll road is to be constructed, etc., and (3) the requirements providing

for a time and place for hearing, and publication of notice of the hearing, it may be conceded that these and similar procedural requirements present only questions of fact which may properly be inquired into and determined by the Municipal Board of Control, without further rules or standards for guidance, and we see in them no unauthorized delegation of legislative power.

But there is more to the statute than that. It provides that at the hearing on the petition, at which "the matter shall be tried as an issue of fact . . . the Municipal Board of Control shall determine whether or not the laying out, construction and operation of the toll road is in the public interest and whether all the requirements of this Act have been substantially complied with and, if the Municipal Board of Control shall so find, it shall enter an order creating a municipal corporation and fixing the name of the same, . . ." Thus the Legislature attempts to delegate to an administrative agency the crucial question whether a toll road or toll bridge in any given instance will be "in the public interest." Necessarily this involves questions of vital public policy requiring the exercise of discriminating legislative statecraft—particularly so in view of the existence of our state-wide system of highways (G.S. 136-1 to 136-101) and the recently created "North Carolina Turnpike Authority" with power and authority to lay out, construct and operate turnpikes and toll roads on a state-wide basis. Chapter 894, Session Laws of 1951, now codified as G.S. 136-89.12 et seq.

Manifestly, the power to determine whether the construction and operation of a toll road or toll bridge in any given instance will be "in the public interest" is purely a legislative question to be resolved only in the exercise or under the direction of legislative powers of guidance and control. Yet, the statute attempts to confer on the Municipal Board of Control the naked, arbitrary power to make this determination, without standards of legislative guidance of any kind, thereby attempting to clothe the members of this administrative agency with apparent power in their unguided discretion to give or withhold the benefits of the law in any given case or cases.

It necessarily follows from what we have said that the statute is violative of Article II, Section 1, of the State Constitution which inhibits the Legislature from delegating its supreme legislative power to any other department or body.

2. *The question whether the amendatory act brings the statute into conflict with Article II, Section 29, of the State Constitution.*—This section of the Constitution provides in pertinent part that the "General Assembly shall not pass any local, private, or special act or resolution . . . authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys; relating to ferries or bridges;

. . . nor shall the General Assembly enact any such local, private or special act by the partial repeal of a general law, . . . The General Assembly shall have power to pass general laws regulating matters set out in this section."

As bearing on the question whether the amendatory act (Chapter 993, Session Laws of 1951) transforms the statute into a "local act" within the meaning of the Constitution, it is significant that the act authorizes the construction and operation of toll roads and toll bridges only within five counties of the State.

In *Idol v. Street,* 233 N.C. 730, 65 S.E. 2d 313, in which Article II, Section 29, of the Constitution was construed and applied, the Court said: " 'a local act' is one operating only in a limited territory or specified locality."

In *S. v. Dixon,* 215 N.C. 161, 1 S.E. 2d 521, an act which excepted from its provisions 64 of the 100 counties in the State was held to be a local or special act and invalid under Article II, Section 29, of the Constitution.

It is manifest that the act in question, as amended, is an act "authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys," and is also an act "relating to ferries or bridges."

It necessarily follows that the statute is repugnant to Article II, Section 29, of the State Constitution and is therefore void.

The cases relied on by the defendants are distinguishable.

3. *The question of tax exemption.*—Conceding, without deciding, that the plaintiff may be clothed with corporate existence, nevertheless we are constrained to the view that it is not a municipal corporation within the purview of Article V, Section 5, of the Constitution of North Carolina, which provides: "Property belonging to the State or to municipal corporations shall be exempt from taxation."

In order to come within the constitutional orbit of tax exemption, a corporation must be an instrumentality, an agent, a department, or an arm of the State in the sense of being at least a subordinate branch of the State government or of a local subdivision thereof and subject to governmental visitation and control, so that ordinarily the interests and franchises pertaining to the corporation are either the exclusive property of the government itself or are under the exclusive control of some agency or political subdivision thereof. See 37 Am. Jur., Municipal Corporations, Sections 4 and 6; 18 C.J.S., Corporations, Sec. 18; 13 Am. Jur., Corporations, Section 17; McQuillin, Municipal Corporations, 3rd Ed., Vol. 1, Sections 2.01 through 2.27. See also *Drainage Commissioners v. Webb,* 160 N.C. 594, 76 S.E. 552; *Southern Assembly v. Palmer,* 166 N.C. 75, 82 S.E. 18.

In the case at hand it is noted that the plaintiff is set up as a corporate entity, controlled by a "governing board" appointed by the ten original petitioners and incorporators, without the intervention of any agency or official of the government. Both the challenged statute and the charter issued thereunder by the Municipal Board of Control direct that the governing board so selected shall serve for a period of six years, or until their successors are duly elected and qualified, with further provision that the successors to the governing board shall be chosen by the board members themselves. It is further provided that any vacancy occurring at any time in the membership of the governing board shall be filled by the remaining members.

Thus, the exclusive direction and control of the corporation is vested in a self-perpetuating body, created in its inception without governmental intervention of any kind.

Moreover, the statute expressly directs that the corporation may "fix, . . . charge, and collect" such toll fees as it deems proper "without obtaining the consent or approval of any department, division, commission, board, bureau, or agency of the State, and without any other proceedings . . ." (G.S. 136-89.6(g)).

The statute further provides that when such tolls shall be so fixed they "shall not be subject to supervision or regulation by any other commission, board, bureau or agency of the State." (G.S. 136-89.6.)

Manifestly, a corporation so set up beyond the ambit of governmental visitation and control may not be classified as a tax exempt municipal corporation within the meaning of the Constitution. Its status as fixed by the controlling provisions of the statute is that of a private corporation. (18 C.J.S., Corporations, Sec. 18.) And this is so notwithstanding the recitals in the statute to the effect: (1) that the corporation "shall be operated entirely for the benefit of the public," (2) that certain financial reports shall be filed with the State Highway and Public Works Commission, and (3) that the Highway Commission shall have the option to purchase the property of the corporation on the open-end basis set out in the statute. These recitals are neutralized and stripped of effectiveness by the provisions which expressly immunize the corporation from any kind of governmental visitation or control.

The decisions in *Webb v. Port Commission, supra,* and in *Wells v. Housing Authority, supra,* relied on by the defendants, are distinguishable. In the *Webb case,* admittedly a borderline case as disclosed by the dissenting opinion by *Brogden, J.,* concurred in by *Stacy, C. J.,* the power to appoint the members of the governing board of the corporation was vested in the commissioners of Morehead City. Thus, in that case the corporation was under the direct control of the governing officials of a local subdivision of the State government. Similarly, in the *Wells case,*

the members of the governing board of the local housing authority were appointed by the board of commissioners of the City of Wilmington, and in that manner the housing authority was kept within the orbit of governmental control on the local level. In the instant case there is no such control. The governing board functions as in the case of any private corporation.

The other authorities cited and relied on by the plaintiff have been carefully examined. They are either factually distinguishable or not considered authoritative with us.

It follows from what we have said that the judgment below is

Reversed.

PARKER, J., took no part in the consideration or decision of this case.