## APPEAL OF MARY I. ALLEN ET AL.

[ESTATE OF DANIEL ALLEN, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILA-
DELPHIA COUNTY.

Argued April 5, 1889—Decided April 15, 1889.

*(a)* A testator directed his executors to carry on his business for the benefit of his wife and children for a designated period, "and to account to them for the net profits thereof, first retaining a salary of $20 per week each, together with five per cent each, of said net profits."

*(b)* One of the executors renouncing, the other, a son of the testator, hav-

ing an interest to the extent of one fifth of the profits of the business, took out letters, conducted the business as directed by the will and filed an account of the profits thereof.

1. On the adjudication of the account, the accountant was properly awarded the one fifth of the profits for his own interest in the business, as well as the salary and compensation, fixed by the will, out of the remaining four fifths belonging to the estate.

2. And this, notwithstanding the fact that at the date of the will the testator was conducting the business alone, on his own account and in his own name, the son not being admitted as a partner until a short time before the testator's death.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 159 January Term 1889, Sup. Ct.

On April 11, 1888, the account of Stanislaus J. Allen, executor of the will of Daniel Allen, deceased, was called for audit before ASHMAN, J., when it was made to appear that the testator died testate on August 12, 1884, leaving a widow and eleven children, seven of whom were then minors. By his will, dated February 23, 1881, he provided:

"It is my will and desire that my said executors shall manage and carry on my business as now conducted by me at No. 2644 Frankford Road, in the city of Philadelphia, for the benefit of my wife and children, until my son Daniel V. Allen shall attain the age of twenty-five years, and to account to them for the net profits thereof, first retaining a salary of twenty dollars per·week each, together with five per cent each, of said net profits."

At the date of this will the testator was carrying on the dyeing business in his own name and upon his own account, but on January 1, 1882, he admitted his son, Stanislaus J. Allen, as a partner in the business to the extent of one fifth of the profits. The executors named in the will were the testator's brother, Alexander, and his said son, Stanislaus, J. Alexander declined to act, and letters testamentary were issued to Stanislaus, J., alone, who continued the business after the testator's death as directed by the will.

The account adjudicated upon was of the profits of the business brought up to date, and the accountant claimed, and, against the objection of Mary I. Allen and others, his sisters,

was allowed by the auditing judge, the one fifth of said profits, in addition to the salary and commission provided by the will.

Exceptions having been filed to the adjudication by Mary I. Allen et. al., they were argued before the court in banc, and finally dismissed, the court, FERGUSON, J., filing the following opinion:

The testator at the time of his death was engaged in the dyeing business in connection with his son, Stanislaus, J., under the firm name of Daniel Allen & Son. It was conceded that the son owned no part of the capital of the said business, but that his interest consisted in one fifth of the net profits. Ordinarily the death of a partner dissolves a partnership, but in this case the testator provided in his will that the business should be continued until a majority of those interested agreed. in writing to sell or otherwise dispose of it, in the meantime directing that " my said executors shall manage and carry on my said business as now conducted by me at No. 2644 Frankford Road, in the city of Philadelphia, for the benefit of my wife and children until my son Daniel V. Allen shall attain the age of twenty-five years, and to account to them for the net profits thereof, first retaining a salary of twenty dollars per week, each, together with five per cent each, of said net profits." His said son Stanislaus and his brother Alexander were appointed executors, but, as Alexander renounced, letters were granted unto Stanislaus Allen.

It was claimed at the audit that the partnership of Daniel Allen & Son was dissolved by the testator's death; that the business that has since been carried on has been under the authority given by the provisions of the will above recited, and that, therefore, all the compensation to which the accountant is entitled is that fixed by the will, viz., twenty dollars per week and five per centum of the net profits. The auditing judge found that the accountant was entitled to the compensation fixed by the will, as well as to his interest in the profits under the partnership agreement. This finding is the subject of the exceptions.

It was contended on behalf of the exceptants that, as this will was executed before the partnership was formed, the provisions therein with reference to compensation could not have

contemplated compensation to the accountant in addition to a share of the profits as a partner; but, as under our act of assembly, all wills are construed to speak and take effect as if executed immediately before the death of the testator, there is no weight to be given to this circumstance, particularly as the testator lived for nearly three years after the partnership was formed, and had ample opportunity to change his will in this respect if he had so desired. As he made no change, it must be presumed that he intended it to stand as we find it.

The will directs that the business "as now conducted" should be continued by his executors. The word "now" must refer to the time of the testator's death, and the business was that in which he was at that time engaged, to wit, the dyeing business, with his son Stanislaus as a partner to the extent of one fifth of the profits. This business was to be continued by the accountant, and for so doing he was to receive the compensation fixed by the will. That the testator meant to give him this in addition to his share of the profits is, we think, evident from several considerations.

This provision of the will with reference to continuing the business was not inserted for the purpose of benefiting the surviving partner. On the contrary, the testator declares it to be for the benefit of his wife and family. And this purpose can be more fully appreciated when it is recollected that he left surviving him a widow and eleven children, almost all of whom were minors. The accountant therefore has put upon him the whole burden of this business, and the rest of the family, who share no portion of the labor or responsibility, divide equally with him the profits. This hardly seems to be fair or just, when we consider that the business was one which did not require capital, so much as industry and skill, to make it successful. How very proper was it, therefore, for the testator to provide in his will some compensation for the accountant, in addition to that to which he was already entitled as a member of the firm.

If the view suggested by the exceptants is correct, we are to believe that the testator meant to very materially increase the labors of the accountant, and at the same time diminish his compensation. In his lifetime the testator was the head of the firm, and an active participant in its affairs. As death has left

the accountant without his advice and assistance, he has had to carry on the business alone, and yet he is not to derive as much profit from it as when he had his father to share with him its labors and responsibilities.

The account shows that since the death of the testator the profits of this business have been about $10,000 a year. Under the partnership the accountant was entitled to one fifth, or $2,000. If he is now to receive only the compensation named in the will, he will only be entitled to twenty dollars per week, or $1,000, and five per centum on the net profits; in all, $1,500; so that with his burden double, his income is decreased one fourth. Surely the testator did not mean this.

Under the will the majority of those interested in the estate of the testator have the power to close this business at any time. They have not exercised this power, but permitted the accountant to carry it on, and, as the account shows, he has done so at a great pecuniary advantage to them. If the testator were alive, he could not deprive the accountant of his share of this profit; much less can the legatees under his will do so. It would be manifestly unjust to permit them, in the language of the auditing judge, "to claim the benefits of the partnership, and at the same time to repudiate its obligations."

The exceptions are dismissed.

The court then entered a decree awarding to the accountant one fifth of the net profits of the business from the testator's death; $20 per week out of the remaining four fifths, and five per centum on said four fifths (first deducting the $20 per week), as salary for taking care of the interest of the estate in said firm. Thereupon the exceptants took this appeal, assigning the said decree for error.

*Mr. George W. Spiese, Mr. John G. Johnson* and *Mr. Charles Hart*, for the appellants.

*Mr. James M. Beck* and *Mr. William F. Harrity*, for the appellee.

PER CURIAM:

The questions involved in this contention were fully consid-

ered and correctly disposed of by the court below; and on its opinion the decree complained of is affirmed.

Decree affirmed and appeal dismissed at the costs of appellants.