STATE OF NORTH CAROLINA on RELATION OF JAMES C. TILLETT, PETITIONER, v. EMILY MUSTIAN, ELTON TWIFORD, ROBERT YOUNG, H. R. MORRISON AND JIMMY GRAY, RESPONDENTS.

(Filed 29 February, 1956.)

**1. Pleadings § 15—**

A demurrer admits the allegations of fact contained in the complaint, but does not admit legal conclusions drawn therefrom by the pleader.

**2. Constitutional Law § 8a—**

Legislative power vests exclusively in the General Assembly. Constitution of North Carolina, Article II.

**3. Constitutional Law § 8c—**

The General Assembly may confer upon municipal corporations certain lawmaking powers relating to matters of local self-government. Constitution of North Carolina, Articles VII, VIII, IX.

**4. Constitutional Law § 8b—**

The power to create and dissolve municipal corporations, being political in character, is exclusively a legislative function.

**5. Municipal Corporations § 4—**

An election to vote on a proposed repeal of the charter of a municipal corporation created by special act, G.S. 160-353, *et seq.*, may not be held prior to or simultaneously with the first regular election to be held in such municipality, since the statute requires that the petition be signed by not less than 25 per cent of the voters in the preceding election, and the statute must be strictly construed, since such election is in effect to repeal the special act of the General Assembly creating the municipality.

APPEAL by plaintiff's relator from judgment of *Morris, J.,* heard 3 September, 1955, on demurrer to complaint, DARE.

Statutory action, in the nature of a proceeding in *quo warranto*, commenced 5 July, 1955, to declare nonexistent the Town of Kill Devil Hills and the municipal offices thereof, and to enjoin defendants from performing any duties of such nonexistent offices.

James C. Tillett, plaintiff's relator, alleges that he gave bond and obtained leave of the Attorney-General to bring this action in the name of the State under G.S. 1-515 *et seq.*

A summary of the allegations of the relator's complaint follows:

1. Relator is a citizen, resident and taxpayer of Kill Devil Hills.

2. The Town of Kill Devil Hills, North Carolina, was incorporated by Chapter 220, Session Laws of 1953. In accordance with its provisions, the Board of Commissioners of Dare County appointed its first officers, to wit, a mayor, three commissioners, and a treasurer, to serve until the first day of June, 1955; and these appointees qualified and proceeded to perform their respective duties. The 1953 Act provided that their successors were to be elected on Tuesday, after the first Monday in May, 1955, and biennially thereafter.

3. A petition was presented to the Commissioners at their regular meeting held 1 March, 1955, signed by "37 electors, residing within the territorial limits of the Town of Kill Devil Hills." The petitioners moved that a special or general election be called to allow the voters to determine whether the town charter should be retained or repealed in its entirety. Upon receiving the petition, the Mayor stated that "the Town Board was very glad to receive the petition and that it was the desire of said Board and himself as Mayor to present the matter

of repeal at a future election to be determined by a majority of the qualified voters in said town."

4. The Mayor and Board of Commissioners duly adjudged that the petition was in order; and, in compliance therewith, by resolution, "fixed Tuesday, May 3, 1955, as the day of election to vote upon the question of repeal of the charter of the Town of Kill Devil Hills, which day was also the date set by law to vote upon the office of Mayor, Commissioners, and Town Treasurer, . . ." The resolution dated 29 March, 1955, provides, *inter alia,* that "said election shall be conducted for the purpose of voting on a repeal of an act to incorporate the Town of Kill Devil Hills, Chapter 220 of the 1953 Session Laws of North Carolina"; designates the Town Hall as the polling place and place for registration; appoints the registrar and judges of election; prescribes the time when "all persons eligible to vote in the Town of Kill Devil Hills, as qualified by general law," may register; designates challenge day; and orders that "the resolutions shall be posted at four places in the Town of Kill Devil Hills."

5. The Mayor and Commissioners caused a notice to be published in the *Coastland Times,* a newspaper of general circulation in Dare County, three times, to wit, on 11 March, 25 March, and 1 April. This notice, over the signature of the Mayor, was addressed to the "Qualified Voters of the Town of Kill Devil Hills, N. C."; called attention to the 7-day period, commencing 16 April, for registration; and gave notice that the registration was "for the election on May 3, 1955, for the purpose of electing a Mayor, three Commissioners, a Treasurer, and voting upon the repeal of an act to incorporate the Town of Kill Devil Hills."

6. The Mayor and Commissioners caused another notice, dated 14 March, 1955, and bearing the signature of the Mayor, to be placed at the courthouse in Manteo, and "three other public places *in said County,*" in which, in addition to the notice given of the time and place for registration, they set forth: "The Board of Commissioners of the Town of Kill Devil Hills have called for the registration of all eligible voters for the purpose of participating in a regular election to elect a Mayor, three Commissioners and a Treasurer and to vote upon a repeal of an act to incorporate the Town of Kill Devil Hills, Chapter 220 of the 1953 Session Laws of North Carolina, *if upon examination the petition proves to be legal.*" (Italics added.)

7. "On May 3, 1955, and in accordance with law," an election was conducted, at which Emily Mustian was elected Mayor, and Elton Twiford, Robert Young and H. R. Morrison were elected Commissioners and Jimmy Gray was elected Town Treasurer. The persons so elected are the respondents herein.

8. On 3 May, 1955, on a separate ballot, 76 votes were cast, "For repeal of Town Charter," and 70 votes were cast, "Against Repeal of Town Charter." The majority of the qualified voters having cast their ballots in favor thereof, the Town Charter was thereby repealed; and thereafter, as the relator "is informed, believes and therefore alleges," the Board of Elections certified to the then acting mayor and commissioners "the results of the elections, both as to the question of repeal of said charter and the officers elected."

9. As the result of said election, "said town and its officers ceased to function legally after the first day of June 1955, but nevertheless the respondents and each of them voluntarily went before the Clerk of the Superior Court in Dare County on June 1, 1955, and were inducted into their respective purported offices."

10. "Each of said respondents has since June 1, 1955, been unlawfully attempting to possess said offices and usurping the powers and duties of same."

Defendants' demurrer, summarized, sets out these objections to the complaint:

1. The facts alleged do not entitle the relator to maintain this action under G.S. 1-515.

2. The provisions of G.S., Article 23, Chapter 160, are inapplicable to Kill Devil Hills, incorporated by direct special Act of the General. Assembly.

3. If applicable, the facts alleged disclose that the election was initiated, not by ordinance of the governing board but by a petition that did not and could not meet the requirements of G.S. 160-356 because no "preceding regular election" had been held in Kill Devil Hills.

The court sustained the demurrer. The relator excepted and appealed, assigning as error the order sustaining the demurrer.

*Forrest V. Dunstan and John H. Hall for petitioner, appellant.*
*Edwards, Sanders & Everett for respondents, appellees.*

BOBBITT, J. The demurrer admits the allegations of fact contained in the complaint, but does not admit legal conclusions drawn therefrom by the pleader. *McKinley v. Hinnant,* 242 N.C. 245, 87 S.E. 2d 568.

The gist of relator's complaint is that, by reason of the election held 3 May, 1955, Kill Devil Hills ceased to exist as a municipal corporation on and after 1 June, 1955.

The relator alleges that he "is a citizen, resident and taxpayer of Kill Devil Hills." Yet he alleges the nonexistence of such municipal corporation. He alleges that on 3 May, 1955, respondents were duly elected to their respective offices. Yet he alleges the nonexistence of

such offices and asks that respondents be enjoined from performing any duties under color thereof. He makes no claim that he is entitled to any municipal office. Nor does he allege that any respondent, under color of his alleged nonexistent office, has interfered in any manner to the prejudice of his personal or property rights.

This action was brought in the name of the State, *pro forma,* by a private relator. The Attorney-General has not participated in the action beyond requiring the bond and granting leave as prescribed by G.S. 1-515.

Can an action to declare a municipal corporation nonexistent be brought except by the State, through the Attorney-General, acting *ex officio* as the representative of the public? Where the sole subject of controversy is the existence or nonexistence of the municipal corporation, can such action be brought against individuals rather than against the municipal corporation itself? Decisions in other jurisdictions, based in part on statutory provisions, would seem to point towards conflicting answers. *Steelman v. Vickers,* 51 N.J.L. 180, 17 A. 453, 14 Am. St. Rep. 675; *Holloway v. Dickinson,* 69 N.J.L. 72, 54 A. 529; *People v. Lewistown Community High School Dist.,* 388 Ill. 78, 57 N.E. 2d 486; *People v. Gentile Cooperative Ass'n,* 392 Ill. 393, 64 N.E. 2d 907; *Farrington v. Flood* (Fla.), 40 So. 2d 462; *Bass v. Addison* (Fla.), 40 So. 2d 466. In this connection, it is noted that this action involved a municipal corporation alleged to have been created and organized as a *de jure* municipal corporation. Does this distinguish this action from cases where the corporate existence is challenged on the ground that, for failure to meet statutory requirements prescribed by general law for its valid organization, the purported municipal corporation did not come into existence either as a *de jure* or as a *de facto* municipal corporation?

Since our decision is put on other grounds, we refrain from discussing the serious questions raised as to whether the relator could maintain the action as presently constituted if his legal position were otherwise correct.

The relator's entire case is based on the alleged repeal of the corporate charter of Kill Devil Hills by the result of the election held 3 May, 1955. His contention is that this election was held in substantial compliance with the provisions of G.S. 160-353 through G.S. 160-363, being Article 23, Subchapter II, of Chapter 160.

Legislative power vests exclusively in the General Assembly. Article II, Constitution of N. C. It may confer upon municipal corporations certain lawmaking powers relating to matters of local self-government. Articles VII, VIII, IX, Constitution of N. C.; *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310; *Taylor v. Racing*

*Asso.*, 241 N.C. 80, 95, 84 S.E. 2d 390.  The power to create and dissolve municipal corporations, being political in character, is exclusively a legislative function.  *Boone County v. Verona,* 190 Ky. 430, 227 S.W. 804.

Section 4, Article VIII, Constitution of N. C., now provides:

"4. Legislature to provide for organizing cities, towns, etc.—It shall be the duty of the Legislature to provide *by general laws* for the organization of cities, towns, and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessment in contracting debts by such municipal corporations."

The italicized words, *by general laws,* were inserted by amendment submitted by ch. 99, Public Laws of 1915, ratified in the general election of November, 1916, and effective 10 January, 1917.  This constitutional directive to the General Assembly was implemented by the enactment of ch. 136, Public Laws of 1917, now codified as Subchapter II of Chapter 160 of the General Statutes, under the caption, "Municipal Corporation Act of 1917."

In *Kornegay v. Goldsboro,* 180 N.C. 441, 105 S.E. 187, this Court held that the 1917 constitutional amendment did not restrict or impair the power of the General Assembly to legislate concerning municipal corporations by special act.

The validity of the 1953 Act incorporating Kill Devil Hills is alleged, not challenged.  The legal existence of Kill Devil Hills until 1 June, 1955, is alleged, not challenged.

The Act of 1953 incorporates the Town of Kill Devil Hills.  It defines the corporate limits.  It provides that the Board of Commissioners of Dare County shall appoint its first officers, to wit, a mayor, three commissioners, and a treasurer, the treasurer to be *ex officio* clerk to the board of commissioners, to serve until the first day of June, 1955.  It provides that "their successors in office shall be elected at an election to be held on Tuesday after the first Monday in May 1955, and biennially thereafter, in accordance with Section 160-30 of the General Statutes of North Carolina."  As to its corporate powers, and the authority of its corporate officers, etc., there is no specific provision.  It is provided generally that Kill Devil Hills "shall be subject to all of the provisions contained in Chapter 160 of the General Statutes of North Carolina, relative to cities and towns, and all provisions of said Chapter not inconsistent with this Act are hereby made a part of the same."

The election of officers on 3 May, 1955, was in strict compliance with the specific legislative provision therefor in the 1953 Act.

Under G.S. 160-353 *et seq.,* an election to vote on a proposed amendment to or repeal of the charter of a municipal corporation may be

initiated either (1) by ordinance of the governing body, predicated upon its findings that the amendment or repeal is "for the best interest of the municipality," or (2) by petition "signed by not less than twenty-five per centum of the qualified electors entitled to vote at the next preceding regular election in such municipality."

It is neither alleged nor contended that the election of 3 May, 1955, was initiated by ordinance of the governing body. The allegation is that the election was called on the basis of a petition signed by 37 electors residing within the territorial limits of the Town of Kill Devil Hills. Obviously, since there had been no "next preceding regular election in such municipality," the petition *did not* and *could not* comply with the statutory requirements.

If it be conceded that the provisions of Article 23, Chapter 160, G.S. 160-353 through G.S. 160-363, are applicable to the 1953 Act, a question on which we need not pass, the conclusion reached is that these statutes, construed *in pari materia,* disclose that the General Assembly did not contemplate or intend that the 1953 Act should be subject to repeal by an election initiated by petition and held prior to or simultaneously with the *first* regular election to be held in such municipality, to wit, the election of 3 May, 1955, prescribed by the 1953 Act for the choice of its first *elected* officers; and that the election of 3 May, 1955, while valid as to the election of municipal officers, was void in respect of the alleged repeal of the statutory charter. When a municipal corporation derives its corporate existence from the General Assembly by direct special Act of incorporation, the requirements of a prior general statute, under which an attempt is made in effect to repeal such special Act of the General Assembly, will be strictly construed. It is unnecessary to consider whether the petition, the call for election, the notice thereof, etc., failed to comply with statutory requirements in other respects.

For reasons stated, the order sustaining demurrer is
Affirmed.